SOUTHWICK, P.J.,
for the Court.
¶ 1. A Bolivar County Circuit Court jury convicted Bobby Trotter of committing a drive-by shooting. On appeal, he claims error in excluding the testimony of a witness and that the verdict was against the overwhelming weight of the evidence. We find no error and affirm.
¶ 2. In July 2002, Trotter, his twin brother, Billy, and three friends were riding around Cleveland, Mississippi, in his truck. Some witnesses called the vehicle a “mini-SUV.” Problems arose when Trotter and his friends were met by another group of young men riding in a car being driven by Jeff Selmon. Members of these two groups had a history of altercations. The Selmon group parked at a convenience store. Trotter and others were already there. As one of the Selmon passengers walked into the store, Trotter was exiting and they bumped into each other. This led to a verbal altercation in the parking lot. Police arrived and both groups were ordered to disperse.
¶ 3. Sometime later, the Selmon car went to a residence. The Selmon party parked in front of the house. They were getting out of the car as the owner of the house came out to greet them. At that moment, Trotter and his friends drove by in his truck. An argument ensued between someone in Trotter’s truck and a person standing in the yard. A gun was fired in the air. There was evidence that the shooter was Frank Hampton, who was in the back of the Trotter vehicle. In response to the gunfire, a beer bottle was thrown at the truck. Trotter then sped away. Witnesses for the State testified that Trotter circled the block, came back, and Hampton fired several more shots.
¶ 4. The defendant, Trotter, testified that when he drove away after the first gunfire, he parked beneath a street light to inspect his vehicle. He was allegedly unaware that Hampton had fired any shots. Under the street light, Trotter saw scratches from a broken bottle. He decided to return to the house to fight someone because of that damage. Trotter stated that he drove back to the house and as he was about to exit his truck, more shooting began. Trotter said that he believed someone from the Selmon group was shooting at him, so he jumped back into his truck and sped away.
¶ 5. All the evidence was that Hampton was the only person firing a weapon. *250 Trotter agreed in his testimony that Hampton was the shooter. Trotter claimed that at the time, though, he had no knowledge that anyone with him had a gun nor that there would be any shooting. Trotter stated that Hampton was in the back of the truck and he did not know that Hampton was shooting. There were bullet holes in the Selmon car and in the exterior of the house. There were no injuries.
¶ 6. Trotter and Hampton were both charged with the offense of a drive-by shooting. The trials were severed. The State’s theory regarding Trotter’s guilt is that he was aware of Hampton’s plan to shoot and aided and abetted him by driving past the residence where the shooting occurred. Trotter was convicted and sentenced to fifteen years in the custody of the Mississippi Department of Corrections. He appeals.
DISCUSSION

1. Exclusion of testimony

¶ 7. Trotter argues that the trial court erred by not allowing his twin brother, Billy, to testify. After completion of voir dire and opening statements, and following the lunch break, the defense requested a hearing in the judge’s chambers. Defense counsel revealed that she planned to introduce Billy as a witness. The State objected, stating that Billy was not on the witness list for the defense, no discovery had been conducted, and they had no idea what he would say.
¶ 8. The defense claimed that Billy was not disclosed as a potential witness because of uncertainty about whether he would be present for trial. The defense counsel said that it was only over that first day’s lunch break that it became known that Billy was in town and was prepared to give a statement as to what had happened. Counsel had a brief conversation with Billy that morning, did not gain much understanding of what he would say, but decided to call him as a witness.
¶ 9. The judge concluded that this was a discovery violation. He gave the State a chance to talk to the witness. After prosecutors talked with Billy, they learned that he had been in town since 8:00 that morning. He had only been called at noon by his brother to testify. The State claimed that this was a purposeful discovery violation and objected to his testimony.
¶ 10. The judge also determined that the defense had violated the sequestration rule, which had been invoked before trial began. The defense talked with this potential witness after the rule had been invoked. The right of the trial court to require that non-party witnesses be excluded from the courtroom and not discuss the case with other witnesses has long existed in state practice and is now controlled by an evidentiary rule. M.R.E. 615. Not long before adoption of Rule 615, it was explained that the sequestration rule gave a court discretion during and before trial to exclude witnesses from the courtroom, but attorneys in the case should be permitted to consult at least with their own witnesses even after the rule was invoked. Reagan Equip. Co. v. Vaughn Gin Co., 425 So.2d 1045, 1048 (Miss.1983). Nothing in Rule 615 appears to change the prior sequestration practice that permitted counsel to talk to their own witnesses. Error occurred here in blocking counsel from talking with a witness whom she planned to call. Perhaps counsel could be instructed not to reveal what had already occurred in the proceedings. The judge’s ruling went much further.
¶ 11. The court’s decision to prohibit’calling Billy as a witness was explicitly based on the violation of the sequestration rule, not on a discovery violation. The sequestration rule does not *251 prevent a party’s counsel from talking to its own witnesses. However, reversal does not result from an erroneous decision to admit or exclude evidence in a criminal case unless the ruling undermined a substantial right of the defendant. Whitten v. Cox, 799 So.2d 1, 13 (Miss.2000). Usually an adverse effect on a substantial right cannot be found unless meaningful details about the proposed testimony are explained through a proffer. Thompson v. State, 602 So.2d 1185, 1188 (Miss.1992). The proffer allows the nature and significance of the evidence to be evaluated.
¶ 12. When the judge refused to permit Billy Trotter to be called, he also expressed his concern that he had not been given any information concerning the subject of Billy’s testimony. The prosecutor interviewed Billy after the defense said that he would be offered as a witness. Billy allegedly was uncooperative and would not explain what he was going to say. Defense counsel apparently did not have much information about Billy’s testimony either. The court refused to permit that attorney to talk again to her own potential witness, apparently because of the trial judge’s view of the sweep of the sequestration rule. It is difficult to find error in the refusal to permit the calling of a witness when the proponent of that witness has yet to discover the nature of the testimony, even if the trial judge blocked an after-the-fact exploration of the proposed testimony. Still, we examine further to determine if a substantial right was violated.
¶ 13. After the trial and the guilty verdict, Trotter filed a motion for new trial that finally indicated what it was that Billy was expected to say if called. The new trial motion was denied. Billy allegedly would have testified that he, Billy, had been unaware that Hampton was going to fire a gun from the vehicle. We examine the reasonable effect of such testimony.
¶ 14. Bobby Trotter testified that he did not know that Hampton had a weapon, whereas Billy Trotter would have said that he was unaware that Hampton would fire a gun. All witnesses agreed that Hampton was in the very back of the truck, while the defendant was driving. The vehicle was either a truck with some sort of cover on the back or a “mini-SUV.” According to the defendant, the truck had two rows of seats. Hampton was behind those seats in the back of the truck in what Trotter called a “cab.” A back window had to be opened for Hampton to exit the truck. Thus the evidence revealed that the defendant was as far away from the shooter as anyone in the vehicle could be, yet the jury still accepted that Bobby Trotter knew what Hampton was doing.
¶ 15. The central factual issue in the case was whether the defendant knowingly aided and abetted Hampton in the offense of a drive-by shooting. That someone else allegedly was unaware that Hampton had a gun is of little significance to whether the defendant knew and whether he was intentionally participating in that crime by driving to the location where the shooting occurred. The State’s witnesses testified that there were some initial gunshots from Hampton, that Trotter sped away, then he quickly came back and Hampton fired some more shots. There was no direct evidence that Trotter had knowledge of what Hampton was doing in the back of the truck, but there were strong evidentia-ry inferences. Trotter’s testimony as to why he came back after the first altercation at the house was presented to the jury, as was his denial that he knew that Hampton had a gun. Billy Trotter’s potential testimony was cumulative.
¶ 16. Regardless of the invalidity of the trial judge’s ruling based on a doubtful *252 view of the sequestration rule, we find no reversible error because we find no substantial right affected. The jury heard Trotter’s version of events, and heard from other witnesses as well. Had they heard Billy Trotter testify that he too was oblivious to what Hampton was doing in the back of the truck, we find no reasonable basis to believe that the outcome of the trial would have been any different.

2. Verdict

¶ 17. Trotter claims that the guilty verdict was against the overwhelming weight of the evidence. To measure the weight, we test the evidence in a manner that is favorable to the verdict since we assume that the jury made credibility choices favorable to the verdict. Conners v. State, 822 So.2d 290, 293 (Miss.Ct.App. 2001). We put on one side of the scales all evidence consistent with the defendant’s guilt, including all evidence arising from inferences that support the verdict. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). Evidence favorable to the defense that must be accepted as true is placed on the opposite side of the scale.
¶ 18. When we examine the evidence that we have summarized in the light favorable to the verdict, we see an initial, confrontational visit to someone’s house, with a gun being fired from the back of Trotter’s vehicle. Trotter sped away and then quickly came back, with more shots being fired from his vehicle. The permissible inference from this evidence is that at least when Trotter returned to the residence after the initial shooting, he was an intentional aider and abettor to Hampton’s firing his weapon from the vehicle. We affirm the judgment of conviction.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF DRIVE-BY SHOOTING AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FINE OF $5,000 AND $370.49 IN RESTITUTION IS AFFIRMED. THE SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY AND ALL PREVIOUSLY IMPOSED SENTENCES. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
KING, C.J., BRIDGES, P.J., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.