# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01458-COA

**CURTIS AARON WHITE A/K/A CURTIS WHITE A/K/A CURTIS A. WHITE**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/2015 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD T. STARRETT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | AKILLIE MALONE-OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF TWO COUNTS OF GRATIFICATION OF LUST AND ONE COUNT OF STATUTORY RAPE AND SENTENCED TO SERVE EIGHT YEARS ON EACH COUNT OF GRATIFICATION OF LUST AND THIRTY YEARS FOR STATUTORY RAPE |
| DISPOSITION: | REVERSED AND REMANDED - 02/14/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     On August 27, 2015, Curtis White was convicted in Yazoo County Circuit Court of

two counts of gratification of lust and one count of statutory rape. Counts I and III of the

indictment charged White with gratification of lust and the statutory rape of MM,[1] and Count

---

[1] The names of the minor victims are changed for confidentiality purposes.

II charged White with gratification of lust for LM. White was sentenced to serve eight years for each count of gratification of lust and thirty years for the statutory-rape charge. White's statutory-rape sentence was to be served without the possibility of early release, and was to run concurrently with one count of gratification of lust, and consecutively to the other count. White timely appealed and argues that the circuit court committed a plethora of reversible errors. We agree. Because the circuit court repeatedly abused its discretion and violated White's constitutional rights of due process and a fair trial by an impartial jury, we reverse and remand.

## STATEMENT OF FACTS

¶2. White was MM's uncle by marriage, and LM was close friends with MM. White was tried for incidents that occurred in Yazoo County on April 30, 2013, and April 21, 2014. Both counts of gratification of lust stemmed from the alleged events on April 30, 2013. At that time, MM was approximately thirteen years old (born on December 28, 2000), LM was approximately twelve years old (born on January 25, 2001), and White was approximately thirty-two years old (born on March 13, 1981). MM testified that White gave her and a few of her friends beer while they rode horses together, before White drove MM and LM back home. MM alleged that while White was driving them home, he showed the girls pornography on his cell phone, handed the cell phone to MM, and told both girls to watch it. It was further alleged that White then lifted MM's and LM's shirts to touch their breasts and compare whose breasts were bigger. MM testified that White told her that her breasts

2

were larger. White then continued to drive the girls home without further incident. MM testified that she did not tell anyone about the incident.

¶3.      Count III of the indictment stemmed from events that allegedly took place on April 21, 2014. MM testified that she, along with others, helped White move a deck onto his property. She testified that White insisted that she ride in his truck with him while he pulled a trailer attached to the back of the truck, and while the other people helping rode in a separate vehicle following behind them. MM testified that while she was driving the truck, White put her hand on his penis while he put his hand on her vagina. MM alleged that when they arrived back at White's house, White insisted that he, as opposed to his wife Claire, should drive MM back to her house so that MM could attend an appointment later.[2] MM testified that White drove the truck behind a pond and parked the car, where she alleged that he took her clothes off, performed oral sex on her, engaged in vaginal and anal sex with her, and then placed her hand on his penis and moved it back and forth "until stuff came out." She testified that she got dressed as he drove the truck to her grandmother's house, who then took her to her appointment. MM testified that the sexual acts that took place behind the pond lasted "ten minutes at most."

¶4.      Additional witnesses who testified recalled events differently than MM, and Lane Twiner testified that he rode in the back of the trailer attached to White's truck during the

---

[2] MM was attending counseling appointments for behavioral issues; however the circuit court excluded evidence regarding the specificity of the appointments during pretrial motions.

time MM alleges he touched her vagina while she touched his penis. Twiner testified that White, not MM, drove the truck, and that he kept eye contact on White because he was providing directional hand signals to White since the trailer's load obstructed the rear view. Twiner testified that there was a tool box between White and MM in the passenger seat, and that he saw no sexual activity occur between the two. Twiner noted that when White pulled into his driveway with the trailer, he "took out his mailbox." This was not mentioned by MM, who testified that she was driving.

¶5.    White testified in his own defense at trial and in regard to the alleged events of April 30, 2013. He asserted that he neither showed MM or LM pornography nor ever lifted up their shirts. In response to the alleged events of April 21, 2014, he stated that he did not direct MM to ride with him in his truck, and confirmed that Twiner was riding on the trailer attached to the truck, and that he knocked down his mailbox when he pulled into his driveway. White testified that MM's mother called to say that MM had to be home for her appointment, and stated that Claire gave MM some hotdogs to take with her before White drove MM to her grandmother's house. White denied stopping anywhere on the drive back, said MM's grandmother pulled into the driveway when they arrived at the house, and claimed that he was around MM and others over the next several days and she did not act like anything was wrong or out of the ordinary.

¶6.    Prior to the trial, White made a motion in limine to exclude any evidence that he engaged in an affair with a fifteen-year-old named AB when he was approximately twenty-

4

three years old. The affair occurred nine years prior to the trial, and White was never charged with a crime stemming from the affair. The circuit court denied White's motion in limine and all contemporaneous objections during the trial that pertained to the affair.

¶7. At trial, the State was allowed to present evidence, over the defense's vehement objections, that MM alleged White statutorily raped her on July 4, 2012, at Wolf Lake in Humphreys County, Mississippi. That incident was under indictment in a separate county and was not part of any charge that White was tried for in Yazoo County—the trial from which this appeal stems. MM provided the details of that incident in a handwritten statement prepared on January 19, 2015. In the written statement, MM alleged that on July 4, 2012, she, along with her sister and two of White's daughters, went with White to the lake to prepare for the July 4th festivities taking place later that day. Also in her written statement, she said White sexually assaulted her and that he threatened to hurt her and anyone she told. However, on direct examination at trial, MM testified that the alleged events took place a few days before July 4, 2012. MM testified that White asked her to go into the lake with him to retrieve water jugs he placed in the water to attract fish. She told the jury that White then grabbed her head and forced it under water and made her perform oral sex on him until she could not breath. She then testified that he engaged in vaginal sex with her and that she did not tell anyone when they returned to the festivities because she was afraid he would hurt her.

¶8. On cross-examination, MM admitted that the pictures that defense counsel showed her were taken after the alleged rape occurred on July 4, 2012, and depicted her having a

good time. On redirect, the assistant district attorney led MM to say again that the rape actually occurred a few days prior to the Fourth of July party where the pictures were taken.

¶9.     Additional evidence was presented at trial, over defense counsel's objections, that White cheated on his first wife, Karen Hemphill, and gave her STDs on two separate occasions. The circuit court allowed further testimony that White gave Hemphill one of the STDs while she was pregnant. Hemphill testified that when this occurred, she was approximately seventeen years old and White was eighteen years old.

¶10.    After deliberations, the jury returned a verdict of guilty on all three counts. White timely appeals to this Court for relief.

**DISCUSSION**

¶11.    It is long established that the standard of review regarding the admission and exclusion of evidence is abuse of discretion. *Newell v. State*, 49 So. 3d 66, 71 (¶9) (Miss. 2010). Decisions regarding the relevance and admissibility of evidence are "largely within the discretion of the trial court." *Mabus v. State*, 809 So. 2d 728, 733 (¶24) (Miss. 2001). The Mississippi Supreme Court has held that a trial court's evidentiary rulings will not be reversed "unless the error adversely affects a substantial right of a party." *Id.* (citing *Mingo v. State*, 944 So. 2d 18, 28 (¶23) (Miss. 2006)). This Court will not reverse an evidentiary ruling "unless an abuse of discretion is shown, or the trial judge acted outside the rules of evidence." *Id.*

    **I.**    **The circuit court erred by denying White the opportunity to authenticate evidence of electronic communications to attempt to establish the**

**defense's theory regarding MM's motive to fabricate allegations.**

¶12. "A criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory." *Edmonds v. State*, 955 So. 2d 787, 798 (¶29) (Miss. 2007). "While a defendant is entitled to present his defense, the right is not without its limitations, as 'all evidence admitted in support of the defendant's theory of the case must comport with the Mississippi Rules of Evidence.'" *Scott v. State*, 2014-KA-00572-COA, 2016 WL 3391630, at *2 (¶12) (Miss. Ct. App. June 21, 2016) (quoting *Clark v. State*, 40 So. 3d 531, 542 (¶30) (Miss. 2010)). Authentication is a condition precedent to admissibility of evidence. *Smith v. State*, 136 So. 3d 424, 432 (¶18) (Miss. 2014). "A party must make a prima facie showing of authenticity, and then the evidence goes to the jury, which ultimately will determine the evidence's authenticity." *Id*. (citing *Young v. Guild*, 7 So. 3d 251, 262 (¶32) (Miss. 2009)). "Electronic evidence may be authenticated by the traditional means, and is adequately covered by the current rules of evidence, but "the circumstantial evidence that tends to authenticate a communication is somewhat unique to each medium." *Id*. Because social-media posts are subject to fabrication, "something more" than the account owner's name and photograph is required to authenticate the posts. *Id*. at (¶20).

¶13. In this case, the State made a pretrial motion in limine to prevent White from using social-media evidence at trial. White sought to use social-media posts purported to be from MM to establish the defense's theory that MM was lying and that the alleged events never

7

took place. The social-media posts were discovered by family friend Brenda Dew, who reported the posts to MM's mother. The posts depicted MM kissing and engaging in romantic conversations with another female; testimony from her mother regarding text messages she found on MM's phone, MM's behavioral issues, and testimony from Dew supported the validity of the social-media posts. White further sought to offer testimony from various family members of MM that she was seeing a counselor for behavioral problems, that the family had a large fight when informed of MM's social-media posts, and that the family sent MM to a church camp upon hearing of the posts. White sought to introduce the electronic communications and testimony under Mississippi Rule of Evidence 404(b)[3] as evidence of MM's motive to fabricate the allegations against White. However, the State opposed admission of this evidence, arguing it was irrelevant, improper evidence of the victim's sexual past under Mississippi Rule of Evidence 412, and inadmissible due to a lack of authentication under Mississippi Rule of Evidence 901. The circuit court interrupted the State's argument against the admission of the aforementioned evidence, and stated:

> Well let me say this. As far as the posting on social[-]media, that is not relevant. There's no way we can authenticate that. So that motion—as far as the posting, that motion is granted. That will not be reliable, would not be admissible, the social-media posting, okay. Now go ahead.

---

[3] We note that the Rules of Evidence have been restyled to include nonsubstantive revisions since the time of White's trial. We apply the version of the rules in effect at that time.

¶14. In *Smith*, 136 So. 3d at 433 (¶21), the supreme court delineated a nonexhaustive list of possible ways to authenticate social-media evidence. The supreme court listed the following:

> [T]he purported sender admits authorship, the purported sender is seen composing the communication, business records of an internet service provider or cell phone company show that the communication originated from the purported sender's personal computer or cell phone under circumstances in which it is reasonable to believe that only the purported sender would have access to the computer or cell phone, the communication contains information that only the purported sender could be expected to know, the purported sender responds to an exchange in such a way as to indicate circumstantially that he was in fact the author of the communication, or other circumstances peculiar to the particular case may suffice to establish a prima facie showing of authenticity.

¶15. While we decline to delve into the merits of the various evidentiary arguments, specifically those regarding Rules 404(b) and 412, presented by the State and the defense on this issue, we find that the circuit court abused its discretion in refusing to allow the defense the opportunity to even attempt to authenticate the evidence. At minimum, the circuit court should have allowed the defense the chance to proffer the authenticity of the evidence with the court, outside the presence of the jury. A "proffer allows the nature and significance of the evidence to be evaluated." *Trotter v. State*, 878 So. 2d 248, 251 (¶11) (Miss. Ct. App. 2004). Because the nature of these types of child-victim cases inherently involves circumstantial, word-of-mouth evidence, evidence supporting MM's motive to lie is relevant. Under the specific facts of this case, we find that it was reversible error to deny White the chance to authenticate the proposed evidence, especially in light of the significance the

9

evidence had to White's defense.

**II. The circuit court erred in denying White's motion in limine and trial objections regarding evidence of the nine-year-old uncharged statuary rape of AB and an indictment in Humphreys County**.

¶16. Under Rule 404(b), "[e]vidence of crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Also under Rule 404(b), however, this evidence may "be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R.E. 403.

¶17. In *Derouen v. State*, 994 So. 2d 748, 756 (¶20) (Miss. 2008), the supreme court held:

> [E]vidence of a sexual offense, other than the one charged, which involves a victim other than the victim of the charged offense for which the accused is on trial, . . . if properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury, should not be considered per se error.

¶18. In pretrial hearings and on appeal, the State used the rule established in *Derouen* to argue that a nine-year-old, uncharged statutory rape committed by White as part of an extramarital affair was admissible in his trial for the forcible statutory rape of MM. The State argued that such "bad-acts evidence" was admissible to show White's motive, intent, opportunity, and pattern in committing sexual acts against underage girls. Here, the circuit

10

court misapplied the principle established in *Derouen*; it does not *automatically* admit such similar evidence or testimony, but simply eliminated a per se exclusion on such evidence. The proposition that an uncharged, factually dissimilar, and almost decade-old offense contains probative value that substantially outweighs the threat of unfair prejudice to the defendant's constitutional rights is certainly a stretch.

¶19. MM alleged that White raped her behind a barn on April 21, 2014, and that he first raped her when she was eleven years old, in the incident that allegedly took place in Humphreys County on July 4, 2012. As previously discussed, MM testified that on July 4, 2012, White forced MM to perform oral sex on him while he held her head under water until she could not breath, vaginally penetrated her, and told her that if she told anyone about what he did to her, that he would "hurt [her] and whoever [she] told."

¶20. Contrasting those allegations with the testimony that AB gave at trial, it is clear that White's affair with AB is not probative of his plan, motive, intent, or opportunity in regard to MM. AB testified that her affair with White was based on a "mutual flirtation" and that White "was never forceful with [her]." Further, at the time of the affair, White was approximately twenty-four years old, while AB was between fifteen and seventeen years old.[4] In the case at hand, White was accused of being a thirty-three-year-old uncle who repeatedly forcibly raped his eleven-year-old niece for several years. The two scenarios are hardly

---

[4] It was unclear how old White was when the affair began, but the record shows that it lasted for approximately two years, ending when AB was seventeen years old.

factually similar in a way that allows *Derouen* to be a persuasive supporting argument.

¶21. Additionally, the circuit court failed to make a detailed finding on the record explaining its decision to allow such evidence to be heard by the jury. When the State opposed White's motion in limine, it essentially just read the language of Rule 404(b) and argued that the nine-year-old uncharged statutory-rape affair was admissible, seemingly under all nine delineated permitted uses of the Rule; it never offered one permitted use as more appropriate than any other. Though defense counsel responded persuasively in arguing to exclude such evidence, the circuit court made the following ruling on the record:

> The [c]ourt[,] after using the filter test under 403 as to the probative or prejudicial effect, as well as 404(b), as to why the State wishes to offer the evidence, . . . finds the case law in this area is pretty clear, and as late as . . . 2013, the Supreme Court held that if the evidence is found to be more probative than prejudice [sic] and it is filtered through 404(b) as to why the State wished to offer the evidence, then the evidence is admissible. The court finds that the reasons the State gives for the offering of the evidence is [sic] proper pursuant to 404(b), that the evidence is more probative than prejudicial and that the—there will be a cautionary instruction given to the jury . . . .

¶22. The circuit court did not cite any permitted use under Rule 404(b) in its decision, but merely parroted the generalized and blanketed argument made by the district attorney that the evidence was admissible under such rule. "When the trial court admits other bad acts evidence under Rule 404(b), it should make an on-the-record Rule 403 finding that the probative value is not substantially outweighed by the danger of unfair prejudice." *Archer v. State*, 118 So. 3d 612, 625 (¶57) (Miss. Ct. App. 2012) (citing *Tate v. State*, 912 So. 2d 919, 925 (¶16) (Miss. 2005)). While the circuit court did make the aforementioned required

finding on the record, it failed to find under which permitted use listed in Rule 404(b) the evidence would be admitted. The circuit court merely cited the entirety of the Rule in its decision to admit the evidence, which would allow an inference to be made that the evidence was admitted to show preparation—a permitted use under which a nine-year-old, factually dissimilar act certainly could not properly be admitted. This Court finds that the circuit court abused its discretion in admitting the highly prejudicial and minimally probative nine-year-old, uncharged statutory-rape evidence, and as such, committed reversible error.

¶23. As part of the same motion in limine, defense counsel sought to exclude testimony from Brenda Dew, an adult woman who asserted vague allegations that White made sexual advances on her. Because the circuit court failed to specify which aspect of White's motion that her ruling applied to, defense counsel attempt to clarify the ruling with the court, and the following exchange took place on the record:[5]

| Mr. Hollomon: | But I want to make sure—I mean, my motion goes to [Dew's testimony] also, that that be excluded also. |
|---|---|
| The Court: | My ruling goes to that as well. As long as it's offered for the reasons pursuant to Rule 404(b) and it will be given a limited instruction, okay. It goes to any prior victims or statements that have been filtered under 404(b). |
| Mr. Hollomon: | Your Honor, just so the Court is clear on this and I'm clear on this, Brenda Dew is an adult woman who was a neighbor and friend of the White family who's making these allegations. I don't know how that would play into |

---

[5] Joseph Hollomon was Curtis White's defense attorney, and Akillie Malone-Oliver was the district attorney prosecuting the case.

13

gratification of lust and a charge of statutory rape.

The Court: Making allegations of what?

Mr. Hollomon: She's made vague allegations that Curtis [White] made sexual advances toward her.

The Court: Yeah. It comes under 404(b).

Mr. Hollomon: To prove what, Your Honor, if I may ask the State?

The Court: The same—that the State stated that they would offer to prove.

Mr. Hollomon: The same reasons that were given?

The Court: Okay. Now, I'm not going to sit here—I've made my ruling on that. I'm not going to sit here and—

Mr. Hollomon: I'm just trying to be clear for any appellate record, Your Honor.

The Court: Well, the trial will make it clear for any appellate record. Basically, I told you if it comes under 404(b), which is what the State has offered to prove it—

Mr. Hollomon: I understand—

The Court: —that's why they're offering it—then it's admissible.

Mr. Hollomon: For what—I'm trying to understand, Your Honor. I'm sorry. Bear with me.

The Court: I'm not going to sit here and tell you whether it's for the pattern, the opportunity, the motive, the plan. Basically, they've offered to prove that—to show that through that 404(b) filtering.

Mr. Hollomon: But I think they have to state for what purpose it's going to be offered.

14

| | |
|---|---|
| The Court: | And I think they just did, didn't they? |
| Mr. Hollomon: | Not with respect to Ms. Dew, Judge. And I'm sorry if I— |
| The Court: | Would you tell him why you're offering Ms. Dew's testimony? |
| Ms. Malone-Oliver: | For those same filtering things that we just stated: Opportunity, intent, preparation, plan and all that, identity, absence of mistake or accident. |
| The Court: | Okay. Anything further? |
| Mr. Hollomon: | No, Your Honor. |

¶24.   As is shown from the record, the circuit court wholly failed to conduct any type of balancing test required under Rule 403 in regard to the testimony of Dew. Further, evidence of White making sexual advances on Dew, an adult woman, is completely devoid of any relevance or probative value to White's charges of illegal sexual conduct with an underage female. Its lack of probative value is illustrated by the circuit court's inability, and outright refusal, to specify under which permitted use in Rule 404(b) Dew's testimony was admissible. The admission of such prejudicial evidence is an abuse of discretion by the circuit court and constitutes reversible error.

¶25.   For the same reasons as stated above, we find that the circuit court abused its discretion in admitting evidence of bad acts that occurred in Humphreys County that were part of a separate indictment in that county. The incident that took place in Humphreys County allegedly occurred two years before the acts for which White was tried and convicted.

15

The district attorney made reference to the Humphreys County incident in her opening statement, to which defense counsel contemporaneously objected. At a bench conference, the district attorney merely asserted that she was allowed to present the two-year-old evidence from a separate county because she had "to tell the full story as far as how it started." She made only vague references to "case law on point" but failed at that moment, or any other moment, to cite any names or jurisdictions from which the case law came.

¶26. The supreme court has ruled on the admissibility of evidence in order to complete the narrative and tell a "full story." In *Flowers v. State*, 773 So. 2d 309, 324 (¶47) (Miss. 2000), the court held that "[i]t is the 'necessity' by the State to use the other evidence . . . in order to tell a coherent story that is the key to its admissibility." But the court further cautioned that "evidence which is not necessary for the State to prove its case . . . could be unduly prejudicial to the defendant." *Id.* The court clarified *Flowers* in *Keller v. State*, 138 So. 3d 817, 854 (¶93) (Miss. 2014), by applying a principle established in *Wheeler v. State*, 536 So. 2d 1347, 1352 (Miss. 1988). The court explained that "otherwise inadmissible evidence of prior bad acts is admissible in instances where the prior bad acts are 'integrally related in time, place[,] and fact with the' crime for which the defendant is being tried." *Keller*, 138 So. 3d at 854 (¶93).

¶27. Here, the evidence of the Humphreys County incident is not adequately integrally related under the rule established in *Wheeler*. The incidents were two years apart, in two separate counties, and consisted of different sets of facts, as set forth above in this opinion.

16

Such an admission forced White to not only defend himself against the charges for which he was actually on trial in Yazoo County, but also defend a charge triable in a completely separate county. Because such evidence is neither necessary to fully tell a story nor integrally related in time, place, or fact, the circuit court erred in admitting such prejudicial evidence.

### III. White was denied due process by the repeated and persistent acts of prosecutorial misconduct by the district attorney and assistant district attorney.

¶28. "Where prosecutorial misconduct endangers the fairness of a trial and the impartial administration of justice, reversal must follow." *Goodin v. State*, 787 So. 2d 639, 653 (¶41) (Miss. 2001) (citing *Acevedo v. State*, 467 So. 2d 220, 226 (Miss. 1985)). "The standard of review which [appellate courts] must apply to lawyer misconduct during opening statements or closing arguments is 'whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.'" *Wilson v. State*, 194 So. 3d 855, 864 (¶30) (Miss. 2016). "The purpose of a closing argument is to fairly sum up the evidence." *Id*. (citing *Galloway v. State*, 122 So. 3d 614, 643 (¶72) (Miss. 2013)). Prosecutors "are not allowed to employ tactics which are 'inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.'" *Id*. "The prosecutor may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts." *Id*. "Counsel 'cannot, however, state facts which are not in evidence, and which the court does not judicially know, in aid of his evidence. Neither can he appeal to the

17

prejudices of men by injecting prejudices not contained in some source of the evidence.'"

*Id.*

¶29.   "Under the cumulative-error doctrine, individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Harding v. State*, 17 So. 3d 1129, 1133 (¶13) (Miss. Ct. App. 2009).   The case law of our state "allows an accumulation of otherwise harmless error to result in reversal." *Flowers*, 773 So. 2d at 334 (¶82).   Aggregate instances of prosecutorial misconduct can lead to reversal.  *Stringer v. State*, 500 So. 2d 928, 930-31 (Miss. 1986).

¶30.   Throughout White's trial, the district attorney made numerous prejudicial, inflammatory, and improper comments. While the comments may not be reversible standing alone, the cumulative effect of the otherwise harmless errors warrants reversal.  Though the instances of misconduct are plentiful, we only address the most egregious for the sake of brevity.

### A.     Comments on Cross-Examination of LM

¶31.   During the cross-examination of LM, defense counsel asked, "[MM] had moved in 2013 with her father and then back with her mother?"  The district attorney then made a speaking objection, in the presence of the jury, and stated, "Object to the relevance of where [MM] was living. We are here because Curtis [White] was raping her."   Such an inflammatory comment is improper and only serves to prejudice the jury against White.

18

### B.     *Comments on Cross-Examination of White*

¶32.    White testified in his own defense at trial, and during the district attorney's cross-examination of him, she inquired about testimony LM gave regarding riding horses alone with White and MM on occasion.  White responded to the inquiries by refuting LM's testimony and testified that they had never ridden horses alone together.  After the district attorney unsuccessfully attempted to bait White into calling LM a liar and then proceeded to badger him about "what did happen," she made the following statement in front of the jury: "What would you do?  What would you do?  ***I know what you've been accused of happened***.  But I'm talking about what happened between you and [LM] and [MM], when you would all be together?" (Emphasis added).  White responded, "Nothing."

¶33.    "The law is clear that a prosecutor should abstain from incorporating his or her personal beliefs into the presentation of his case." *Lewis v. State*, 905 So. 2d 729, 736 (¶24) (Miss. Ct. App. 2004) (citing *United States v. Young*, 470 U.S. 1, 9-10 (1985)).  Though White's counsel did not contemporaneously object after the district attorney expressed her personal belief of the defendant's guilt, the supreme court has held that a court is "not . . . constrained from considering the merits of the alleged prejudice by the fact that objections were made and sustained, or that no objections were made." *Randall v. State*, 806 So. 2d 185, 210 (¶57) (Miss. 2001).  While "it is the duty of a trial counsel, if he deems opposing counsel overstepping the wide range of authorized argument, to promptly make objections and insist upon a ruling by the trial court," if a comment is "so inflammatory that the trial

court should have objected on [its] own motion, the point may be considered." *Evans v. State,* 725 So. 2d 613, 670 (¶241) (Miss. 1997); *Gray v. State*, 487 So. 2d 1304, 1312 (Miss. 1986).

¶34.    The district attorney's blatant projection of guilt onto White, in the presence of the jury, is so inflammatory, unfairly prejudicial, and extremely improper that in this circumstance defense counsel's lack of objection an does not bar the issue from our consideration on appeal.  The district attorney later made additional prejudicial comments during her cross-examination of White.  She asked White several questions about "raping" MM and LM, and when White responded that she was wrong, she said, "Isn't it true, that not only did you [rape MM and LM], but *that's the same pattern, whenever you get an opportunity around kids* . . . ?" (Emphasis added).  Again, defense counsel did not contemporaneously object, but as stated above and applying the same precedent, we find that under the circumstances of this case, the lack of an objection does not bar this issue from our consideration on appeal.

¶35.    An additional error was made during the cross-examination of White when the circuit court admitted irrelevant and inadmissible character evidence.  Somewhat randomly, the district attorney asked White if he had been unfaithful to his first wife, to which defense counsel objected.  The following interaction took place:

Ms. Malone-Oliver:    He has [a] character witness that's coming in. They're going to talk about what a great person he is . . . .

20

| The Court: | So this line of questioning is going where? |
| Ms. Malone-Oliver: | To the person, to him. |
| The Court: | Character. |
| Ms. Malone-Oliver: | Hmm hmm. |
| The Court: | That's it. |
| Ms. Malone-Oliver: | Yeah. |

¶36.    Defense counsel quickly responded that the fact that the evidence was being used for character purposes was the exact reason it was inadmissible under Rule 403.  The district attorney realized her slip and clarified her position:

| Ms. Malone-Oliver: | He opened the door with that talking about his family life and how he's been with her.  He did that.  I should be able to question him about his family life.  That's all I'm doing. |
| The Court: | Well the thing of it, when we got into this earlier, it went into credibility. |
| Ms. Malone-Oliver: | I'm not talking about— |
| The Court: | No, I'm talking it when [sic] to credibility. |
| Ms. Malone-Oliver: | Right, and that's what I'm talking about it [sic].  That's what I'm using it for. |
| The Court: | Not character. |
| Ms. Malone-Oliver: | Right. I'm sorry. I misspoke. |
| The Court: | As long as it go [sic] to credibility and not his character. |
| Ms. Malone-Oliver: | And his ability to tell the truth and honesty and |

how he lies.

¶37. The circuit court then overruled the objection and allowed the district attorney to question White about if he and his first wife, Karen Hemphill, whom he married when he was eighteen and has since divorced, separated because he was "lying, being untruthful, and being unfaithful on several occasions." The admission of prejudicial and irrelevant evidence did not stop there, but continued when the district attorney asked, in the presence of the jury, if White gave his first wife "two STD[]s while she was pregnant." After defense counsel objected, had the jury admonished to disregard the question, and unsuccessfully moved for a mistrial, the district attorney then asked White if he divorced his "first wife while she was pregnant." Again, defense counsel objected, the jury was admonished to disregard the question, and he unsuccessfully moved for a mistrial. Defense counsel unsuccessfully moved for mistrial two additional times during the cross-examination of White.

¶38. Not only was the evidence that White gave his wife two STDs due to an affair wholly irrelevant to the crimes charged, but it was unfairly prejudicial and substantially outweighed any probative value it may have had. Further, the State inadvertently admitted it was opening its own door to character evidence. The district attorney argued that White would have character witnesses testify in the future, so she should be allowed to attack his character on his cross-examination, before such witnesses testified. Such an argument misunderstands the plain language of Rule 404(a)(1), which only allows a prosecutor to offer "[e]vidence of a [defendant's] pertinent trait" to **"rebut"** evidence the defendant presented first. (Emphasis

22

added).  "The defense must be responsible for opening the door before the State is entitled to enter."  *McGee v. State*, 853 So. 2d 125, 131 (¶13) (Miss. Ct. App. 2003).[6]

¶39.    Twice during the district attorney's cross-examination of White defense counsel objected to the district attorney's mischaracterization of the evidence and facts.  The first time he objected, the circuit court responded, "[J]ury will recall the testimony," to which the district attorney immediately interjected, "[j]ury remembers."  The second occasion, before the circuit court could respond, the district attorney quipped, "The jury knows."  The district attorney's comments are inappropriate and outside the scope of the authority possessed by a prosecutor.  Evidentiary rulings are to be left to the court, and prejudicial comments that are predominately made to tarnish the defense's credibility are improper.  While the aforementioned instances of misconduct may not rise to the level of reversible error or plain error on their own, the cumulative effect of the misconduct substantially prejudiced White and denied him the constitutional rights of due process and a fair trial.

### C.    *Comments During Closing Arguments*

¶40.    "In general, the failure to object to the prosecution's statements in closing argument constitutes a procedural bar."  *Ross v. State*, 954 So. 2d 968, 1001 (¶71) (Miss. 2007) (citing

---

[6] On cross-examination of defense witness Wesley Womble, the State asked: "And you're saying that pretty much Curtis [White] is a good guy?"  Defense counsel immediately objected because on direct examination, Womble was only asked about White's truthfulness.  The circuit overruled the objection, and allowed the State to attack Womble's opinion with specific bad-acts evidence.  This is another example of the district attorney opening her own door to character evidence.

*Spicer v. State*, 921 So. 2d 292, 309 (Miss. 2006)). Despite the procedural bar, this Court may address the statements if they were "so inflammatory that the trial judge should have objected on [her] own motion." *O'Connor v. State*, 120 So. 3d 390, 399 (¶23) (Miss. 2013). As applied to failures to contemporaneously object during closing arguments, plain error may only be found if the inflammatory or prejudicial comments have the "natural and probable effect of . . . creat[ing an] unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Mitchell v. State*, 21 So. 3d 633, 642 (¶31) (Miss. Ct. App. 2008) (quoting *Dampier v. State*, 973 So. 2d 221, 235 (¶39) (Miss. 2008)). "A review under the plain error doctrine is necessary when a party's fundamental rights are affected, and the error results in a manifest miscarriage of justice." *McGee v. State*, 953 So. 2d 211, 215 (¶8) (Miss. 2007). As has long been the rule under both the Constitutions of the United States and of Mississippi, "[n]o person shall be deprived of life, liberty, or property except by due process of law." Miss. Const. art. 3 § 14; *see also* U.S. Const. amend. V. While a defendant is not entitled to a perfect trial, he is certainly entitled to a fair trial by an impartial jury. *Smith v. State*, 986 So. 2d 290, 299 (¶31) (Miss. 2008); U.S. Const. amend. XIV; U.S. Const. amend. VI.

¶41. In the case at bar, there was a litany of prejudicial comments by the State in its closing argument. Defense counsel failed to object to the comments discussed below, which would ordinarily bar this Court from reviewing them on appeal. However, because the State's comments resulted in a manifest miscarriage of justice and a violation of White's

24

constitutional rights of due process and fair trial by an impartial jury, this Court examines the comments under plain-error review. The State's misconduct during its closing argument created an unjust prejudice against White and resulted in a decision influenced by the prejudice so created, thus constituting reversible error. We now briefly discuss the most constitutionally pervasive comments made by the district attorney and the assistant district attorney in their respective closing arguments.

### i. Improper Comments on Facts Not in Evidence

¶42. Both members of the State's prosecution team focused heavily on the absence of any "motive evidence" submitted by the defense. As stated previously, the circuit court excluded social-media evidence and any other references to such, no matter how vague or how far attenuated the references may have been. The State continuously implored the jury to "use their common sense" and argued that it made "absolutely no sense" for MM to fabricate the allegations. The assertion was supported by the district attorney when she said:

> Not one time did you hear anything about [MM] hated Curtis [White] . . . . I asked them on the stand. I'm trying to see[,] well[,] why would she lie on you [sic]. Not one time did y'all hear anything about, she hated Curtis [White], she had a problem with Curtis [White], no motive whatsoever against Curtis [White].

¶43. The State's exploitation of the circuit court's pretrial ruling continued in the assistant district attorney's rebuttal, when she argued that it made no sense for MM to "lie on her Uncle Curtis [White] for no good reason whatsoever," and then noted, "I'm sorry people. That's not how it happens."

25

¶44. It is improper for a prosecuting attorney to comment on evidence excluded by the court. *See Matthews v. State*, 148 Miss. 696, 114 So. 816, 818 (1927). Here, because the circuit court went to such lengths to exclude evidence even remotely connected to the social-media evidence, the defense was deprived of the ability to present evidence supporting the defense's theory regarding MM's motive to fabricate the allegations. Both the district attorney and the assistant district attorney used the circuit court's exclusion of the evidence to argue that the defense did not provide evidence of MM's motive for fabrication because none existed. The exploitation of the court's pretrial ruling in this manner was misleading to the jury, prejudicial to the defendant, and improper under the findings of this Court.

¶45. Further, "[a]rguing statements of fact which are not in evidence or necessarily inferable from facts in evidence is error when those statements are prejudicial." *Jackson v. State*, 174 So. 3d 232, 237 (¶12) (Miss. 2015). The district attorney argued throughout her closing argument that White targeted MM specifically. However, she went a step further in also arguing that there was "[n]o doubt in [her] mind that there were other children that day[,] [who] could have helped [White]" set up for the Fourth of July party. No evidence was presented regarding the availability of other children to help White; in fact, the first time that theory was mentioned to the jury was during the district attorney's closing argument. Such statements are prejudicial because they bait juries into believing there is a basis for the argument outside of the evidence presented. This is especially so when the statement is made by a party who, in the minds of the jurors, has seen all of the possible evidence in the case

26

and, if believed, would not make such a comment unless it was supported by some type of evidence. The district attorney's comment was made in error, and while not sufficient to constitute plain error on its own, combined with the plethora of other errors, the cumulative effect creates reversible error.

### ii. Improper Comments About White's Character

¶46. The district attorney made numerous improper comments regarding White's character. Prosecuting attorneys should "refrain from doing or saying anything that would tend to cause the jury to disfavor the defendant due to matters other than evidence relative to the crime." *Banks v. State*, 725 So. 2d 711, 718 (¶28) (Miss. 1997) (citing *Sumrall v. State*, 257 So. 2d 853, 854 (Miss. 1972)). It is impermissible to use appeals to the fears of juries, such as a defendant's future danger to society, at the guilt or sentencing phases of trials. *Id.*; *see also Williams v. State*, 544 So. 2d 787, 799 (Miss. 1987). Statements that imply a defendant will "commit crimes in the future if acquitted" are improper. *Flora v. State*, 925 So. 2d 797, 812 (¶46) (Miss. 2006) (citing *Banks*, 725 So. 2d at 718 (¶26)).

¶47. At one point during her closing argument, the prosecutor said, "That's the thing with when people don't get stopped from doing something. Nine times out of ten that happens again. It's the urges." It is clear that the district attorney's purpose in implying that White had a ninety-percent chance of being a recidivist was to play on the fears of the jury so that they would return a verdict of guilty. While future-dangerousness comments are not per se reversible error, they are improper and prejudicial and, combined with the multitude of other

impermissible instances of prosecutorial misconduct in this case, provide another validation for our finding of abuse of discretion and reversible error.

¶48.    The district attorney made glaring arguments pertaining to White's character and propensity for sexual deviance. Bolstering her unsupported assertion that White had a ninety-percent chance of committing another sexual crime against a minor, the district attorney argued that "[y]ou can live your whole life and nobody is going be [sic] saying you raping [sic] them, unless you are doing it most of the time." In commenting on White's unfaithfulness to his wife and the STDs he gave her, she asked the jury, "Is this the character of someone that you believe?"

¶49.    Recalling the previous discussion of this evidence, the district attorney was confused when asked to answer the objection alleging that evidence of White's affair was inadmissible character evidence. The district attorney "misspoke" and declared that the evidence was character evidence, before correcting herself to say the evidence was being offered as evidence of White's credibility. However, the arguments made during her closing argument unequivocally show that her misstatement was in fact the exact reason the evidence was being offered. It was offered to attack White's character, not his credibility. Such evidence was inadmissible character evidence at the time it was admitted, and the district attorney's comments regarding the evidence during closing argument were improper and highly prejudicial. Again, while this instance of prosecutorial misconduct, if isolated, may not be enough to constitute plain error, when combined with the many other instances of

28

misconduct, the cumulative effect warrants reversal.

### iii. Improper Comments on the Credibility of Witnesses and the Veracity of Their Testimony

¶50. The district attorney and the assistant district attorney repeatedly remarked on the credibility of witnesses and the veracity of thier statements at trial. It is a long-standing and well-known rule that "[a] prosecutor is forbidden from interjecting his personal beliefs regarding the veracity of witnesses during closing argument." *Moffett v. State*, 156 So. 3d 835, 859 (¶70) (Miss. 2014) (citing *Foster v. State*, 639 So. 2d 1263, 1288 (Miss. 1994)). On several occasions during closing argument, the State remarked that MM "told the truth" at trial and that White did not tell the truth at trial. The State went a step further, and contrasted what defense counsel argued, by saying that the State "was speaking what [was] actually true."

¶51. In cases where such remarks were made in response to defense's counsel's arguments or misconduct, the comments were not considered reversible error. *See Foster*, 639 So. 2d at 1288. However, because the district attorney argued this in her first closing, her remarks clearly could not have been in response to defense counsel's arguments, since she argued before him. The State's remarks were improper and in direct conflict with the precedent of this State. While alone they may not be sufficient to constitute plain error, when combined with all other instances of prosecutorial misconduct in this case, the cumulative effect of the errors requires reversal.

### iv. Improper Comments Vilifying White

¶52. In perhaps the most egregious and prejudicial instance of prosecutorial misconduct, the assistant district attorney called White a "pedophile" three times during her rebuttal closing argument. The first of which occurred during the first three sentences of her argument. The assistant district attorney told the jury that "[t]his is a case about Curtis White [,] who is a pedophile." She continued referencing White as a pedophile when she discussed his relationship with MM and LM and his position to prey on them. She remarked that "a pedophile [is] a person [who] gets into the perfect situation" to prey on their victims. Lastly, the assistant district attorney said, "It's been over two years and this man was having sex with this little girl, his niece, the one that he loves so much, multiple times a week. ***Who does that? A pedophile does it. Tell you who else did it? Curtis White.***" (Emphasis added).

¶53. In addition to the assistant district attorney's distressing comments, the district attorney called White a "child molester" during her closing argument as well. The district attorney attacked defense counsel for his cross-examination of the investigator in this case, and she claimed that defense counsel "tried to make it where [the investigator] had done something wrong." She then said, "But that's what you do when you don't want to reflect on the real issue. ***You want to make it about somebody else [other] than that child molester you got sitting over there beside you***." (Emphasis added).

¶54. "In a criminal case, the district attorney should be careful not to indulge in personal abuse or vilification of the defendant and should not appeal to passion and prejudice." *Steward v. State*, 263 So. 2d 754, 758-59 (Miss. 1972). "[I]t is improper for him to indulge

30

in intemperate characterization, personal abuse, or vilification of [the] accused, tending solely to arouse or to inflame the passion and prejudice of the jury against him, even where such comments are to some extent supported by the evidence." *Craft v. State*, 226 Miss. 426, 434, 84 So. 2d 531, 534-35 (1956). "Further, the jury's decision must be based on the evidence; thus any verdict based on 'bias, passion, or prejudice' will be overturned." *Franklin v. State*, 136 So. 3d 1021, 1031 (¶33) (Miss. 2014) (quoting *Sheppard v. State*, 777 So. 2d 659, 662 (¶10) (Miss. 2000)).

¶55. It is clear that the district attorney's and assistant district attorney's repeated vilification of White during their closing arguments served no other purpose than to inflame the passion and prejudice of the jury against White. By calling White a pedophile multiple times, the assistant district attorney essentially usurped the jury's role in determining guilt and imposed her own personal beliefs on the jury. Her comments were shocking, highly prejudicial, and are not tolerated by this Court. Both the district attorney and the assistant district attorney committed prosecutorial misconduct, and we find that the "natural and probable effect" of repeatedly calling White a child molester and pedophile "create[d] unjust prejudice against the accused so as to result in a [jury] decision influenced by the prejudice so created." There is little other purpose for calling a defendant, who is accused of sexual acts with minors, a pedophile than to inflame the jury, prejudice the defendant, and taint the constitutionally guaranteed right of a fair trial. As such, we find this to be plain error that warrants reversal standing alone.

31

¶56. Even if these comments alone were not found to be sufficient to constitute error so plain to warrant reversal, the cumulative effect of these comments combined with the copious amount of other instances of misconduct creates reversible error.

¶57. Further, there was not sufficient evidence of guilt presented at trial that would excuse this Court from examining this appeal under reviews for plain error and cumulative error. *See Jackson*, 174 So. 3d at 236-37 (¶¶11-13) (holding that there was sufficient evidence of the defendant's guilt so as to excuse the court from finding plain or cumulative error in regard to prosecutorial misconduct).

¶58. Lastly, the circuit court attempted to remedy the admission of the improper character evidence and prejudicial comments by instructing the jury that testimony regarding acts White committed on a child who is not the subject of this case was not indicative of his character or propensity to act in conformity with that character. While this limiting instruction was gravely needed, we find that the overwhelming prejudicial effect the multitude of errors had on White's constitutional rights could not be cured by the instruction.

¶59. Lastly, we attempt to address the concerns raised by the dissent. It appears the dissent views each instance of misconduct in isolation, and as such, would find that White received a fair trial. In doing so, however, the dissent relies on judicial mechanisms—such as jury instructions and limiting instructions—to remedy any inappropriate misconduct by the State. While we agree that in certain instances these instructions are not only appropriate but useful, we find that the cumulative effect of the misconduct in this case—taken as a

whole—deprived White of his fundamental right to a fair trial. We likewise note that the dissent takes issues with White's failure to object to each inflammatory comment. To reiterate, however, we find that those relevant instances were so inflammatory that the trial judge should have objected on her own motion. *See O'Connor*, 120 So. 3d at 399 (¶23). Thus, we find that White's fundamental rights were violated, which therefore requires reversal.

## CONCLUSION

¶60. For the many reasons discussed above, we find that the circuit court abused its discretion and committed reversible error in this case; thus, we reverse and remand for a new trial consistent with the findings of this opinion.

¶61. **THE JUDGMENT OF THE YAZOO COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.**

**GREENLEE, J., CONCURS. LEE, C.J., BARNES AND FAIR, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., AND CARLTON, J.; WILSON, J., JOINS IN PART. WESTBROOKS, J., NOT PARTICIPATING.**

**GRIFFIS, P.J., DISSENTING:**

¶62. Because I do not find the circuit court abused its discretion regarding the admissibility of the evidence, nor do I find White was denied due process or a fair trial as a result of prosecutorial misconduct, I respectfully dissent.

*Social-Media Posts*

¶63. The majority concludes it was reversible error to deny White the opportunity to authenticate the social-media posts. The majority makes this conclusion while admittedly declining "to delve into the merits of the various evidentiary arguments." However, it is the "various evidentiary arguments" that support the circuit court's ruling.

¶64. "Mississippi Rule of Evidence 901 governs the requirements of authentication of evidence." *Smith v. State*, 136 So. 3d 424, 432 (¶18) (Miss. 2014). "[T]he authentication requirement is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id*. (citing M.R.E. 901(a)). "A party must make a prima facie showing of authenticity." *Id*. "Because of special concerns regarding fabrication, the fact that an electronic communication on its face purports to originate from a certain person's social networking account is generally insufficient standing alone to authenticate that person as the author of the communications." *Id*. at (¶20).

¶65. White provided the circuit court copies of the social-media posts. He failed to offer sufficient evidence that the social-media posts were made by MM or that the account was actually hers. When the circuit court voiced its concern over the authenticity, defense counsel stated, "She's got her name and photograph there." However, "[t]he ease with which defendants and alleged victims alike could fabricate a social media account to corroborate a story necessitates more than a simple name and photograph to sufficiently link the communication to the purported author under Rule 901." *Id*. at (¶21). As White failed to provide sufficient evidence to support a finding that the social-media posts were what he

34

claimed, the circuit court did not abuse its discretion by excluding them.

¶66. Additionally, the evidence White sought to introduce centered around MM's sexual orientation and sexual behavior. Pursuant to Mississippi Rule of Evidence 412(a), "reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual offense is not admissible." Evidence of MM's sexual orientation and sexual behavior, and the family turmoil that occurred as a result of such behavior, is exactly the reputation or opinion evidence that Rule 412(a) excludes. As MM's prior sexual behavior was irrelevant, the social-media posts were properly excluded.

¶67. The majority finds the social-media posts are significant to White's defense. I disagree. White's defense is that MM lied about the allegations charged in the indictment. White sought the introduction of the social-media posts as evidence of MM's motive to lie. However, during cross-examination, MM admitted that she has had trouble in the past being truthful, that she sometimes tells lies, and that her lies have been a problem with her family. Thus, the circuit court's exclusion of the social-media posts as evidence of MM's motive to lie did not prevent White from presenting his theory of the defense that she does in fact lie.

*Prior Bad Acts*

*Statutory Rape of AB*

¶68. Typically, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." M.R.E. 404(b). However, evidence of sexual misconduct involving other minors is admissible under Rule

404(b) when it demonstrates "that the defendant's means of accomplishing [sexual activities] on past occasions bear substantial resemblance to each other and with the present offense, which serves as proof of motive and a common plan or scheme." *Boggs v. State*, 188 So. 3d 515, (¶13) (Miss. 2016) (citing *Gore v. State*, 37 So. 3d 1178, 1186 (¶18) (Miss. 2010)).

¶69. Here, the record shows both AB and MM lived in close proximity to White, both of their families had a close relationship with White and trusted him, both had the opportunity to be alone with White, and both had issues with their parents at the time of the offense. The substantial similarities between MM's allegations and White's misconduct with AB support the admissibility of evidence of White's sexual misconduct with AB.

*Humphreys County Incident*

¶70. The State offered evidence that White's sexual misconduct with MM began when he statutorily raped her on July 4, 2012, at Wolf Lake in Humphreys County. Evidence of another crime or prior bad act may also be admissible "to tell the complete story so as not to confuse the jury." *Archer v. State*, 118 So. 3d 612, 625 (¶53) (Miss. Ct. App. 2012). "The prosecution has a 'legitimate interest in telling a rational and coherent story of what happened.'" *Id*. at (¶54) (citing *Brown v. State*, 483 So. 2d 328, 330 (Miss. 1986)). As the majority notes, "[i]t is the necessity by the State to use the other evidence . . . in order to tell a coherent story that is the key to its admissibility." *Flowers v. State*, 773 So. 2d 309, 324 (¶47) (Miss. 2000).

¶71. Here, in order to tell a complete, rational, and coherent story, it was necessary for the

State to present evidence of when and how White began his sexual misconduct with MM. Although the Humphreys County incident occurred at a different time and location, the incident is integrally related in fact with this case as it involves the same victim and similar allegations of sexual misconduct.[7]

¶72. Overall, the record shows evidence of the statutory rape of AB and the Humphreys County incident was properly admitted under Rule 404(b) and filtered through Rule 403, and was accompanied by a limiting instruction. The majority asserts that the circuit court failed to specify under which permitted use the evidence would be admitted. However, the record makes clear such evidence was offered to show opportunity, motive, plan, absence of mistake or accident, and/or intent. Thus, I find the evidence was properly admitted and would affirm.[8]

*Prosecutorial Misconduct*

¶73. I do not find the allegations of prosecutorial misconduct endangered the fairness of White's trial and the impartial administration of justice. *Pitchford v. State*, 45 So. 3d 216, 233 (¶58) (Miss. 2010). Moreover, I disagree with the majority's opinion that "the circuit

---

[7] Here, MM alleged White parked his vehicle behind a pond, performed oral sex on her, and engaged in vaginal sex with her. Regarding the Humphreys County incident, MM alleged that, while at Wolf Lake, White made her perform oral sex on him, and engaged in vaginal sex with her.

[8] The majority finds the circuit court abused its discretion in failing to exclude testimony from Brenda Dew. However, White does not raise such alleged failure as an assignment of error on appeal. Instead, White's assignment of error is limited to the statutory rape of AB and the Humphreys County incident.

court abused its discretion and committed reversible error in this case." Nevertheless, I will address the specific concerns raised by the majority.

*Comments on Cross-examination of LM*

¶74.    The majority finds the comment made by the district attorney that "[w]e are here because [White] was raping [MM]" to be inflammatory and prejudicial. However, the jury had been advised and was aware of the nature of the case. The jury clearly knew the allegations involved and that the State's position was that White raped MM. The fact that this was repeated in front of the jury does not rise to the level of prosecutorial misconduct.

*Comments on Cross-examination of White*

¶75.    The majority further finds the prosecutor's interjection of her personal beliefs and projection of guilt onto White were improper. However, no contemporaneous objection was made by White. "If no contemporaneous objection is made, the error, if any, is waived. *Walker v. State*, 913 So. 2d 198, 238 (¶148) (Miss. 2005). The majority claims the comments were so inflammatory and prejudicial that the circuit court should have objected on its own motion. *See Gray v. State*, 487 So. 2d 1304, 1312 (Miss. 1986). However, if the instances of misconduct were so "plentiful," as the majority notes, White should have objected. White cannot sit idly by and expect the circuit court to object each and every time to what he now claims amounts to "[a]ggregate instances of prosecutorial misconduct."

¶76.    The majority further takes issue with the prosecutor's questions to White regarding his first wife. However, upon White's objection, the jury was instructed to disregard the

38

questions.

*Closing Arguments*

¶77.    The majority finds a "litany of prejudicial comments by the State in its closing argument."  However, once again, White failed to object to any comments made during closing arguments.  Regardless, the record shows the jury was properly instructed that statements made by counsel are not evidence.

¶78.    Upon review, for the reasons discussed herein, I find no abuse of discretion and would affirm White's conviction and sentence.

**IRVING, P.J., AND CARLTON, J., JOIN THIS OPINION; WILSON, J., JOINS THIS OPINION IN PART.**