972 So.2d 24 (2008)
Randy LEONARD, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-02160-COA.
Court of Appeals of Mississippi.
January 8, 2008.
*26 Randy Leonard, pro se.
George T. Holmes, Leslie S. Lee, Jackson, attorneys for appellant.
Office of the Attorney General, by Deirdre McCrory, attorneys for appellee.
Before LEE, P.J., IRVING and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. A jury sitting before the Winston County Circuit Court found Randy Leonard guilty of sexual battery. The circuit court sentenced Leonard to fifteen years in the custody of the Mississippi Department of Corrections with five years to serve and ten years of post-release supervision. The Mississippi Office of Indigent Appeals filed a brief pursuant to Lindsey v. State, 939 So.2d 743 (Miss.2005) and reported that, after a good faith effort to find arguable error, it could find none. Leonard filed a pro se brief and, to paraphrase, submits that the circuit court erred when it (1) tried him without jurisdiction, (2) allowed the prosecution to amend the indictment to reflect the correct date of the offense, (3) overruled his motion to dismiss, (4) overruled his motion for JNOV, (5) violated his rights to a speedy trial, and (6) impaneled a jury comprised of more women than men. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. Before we proceed with the facts of this case, it is necessary to discuss the relationships between the various people involved. Leonard was found guilty of sexually battering sixteen-year-old Jane at the home he shared with Jane's aunt, Donna, in Louisville, Mississippi.[1] Donna's mother, Linda, also lived with Donna and Leonard. Linda's other daughter, Belinda, is Jane's mother.
¶ 3. On August 12, 2005, Jane spent the night with Linda, Donna, and Leonard. Jane slept on the couch that night. According to Jane, around 4:00 a.m., Leonard woke her up when he put his finger in her vagina. Leonard denied that allegation. According to Leonard, he got up around 11:00 p.m. or 12:00 when "one of [his] partners named Charles" visited. Leonard claimed that Jane was undressed and asleep on the couch. Leonard maintained that he only "picked [Jane's] leg up and put it on the couch and covered her up with a big towel."
¶ 4. In any event, Jane left early the next morning and did not tell anyone what happened. She later went to another *27 grandparent's house. Belinda stopped by Leonard's house to borrow a skirt for a funeral. After the funeral, Belinda went back to Leonard's house before she went to pick up Jane. Leonard asked Belinda to drive him to the store. Belinda agreed.
¶ 5. At some point during their drive, Leonard told Belinda that Jane mistakenly thought he tried to touch her inappropriately. When they arrived at Jane's grandmother's house, Jane let her mother inside. However, she slammed the door in Leonard's face. Shortly afterwards, Jane relayed her version of events to Belinda. When Belinda told Donna about Jane's accusation, Donna kicked Leonard out of the house. Donna later asked Leonard to return.
¶ 6. Greg Clark, an investigator with the Louisville Police Department, took statements from Jane and Belinda. When Leonard was picked up for questioning, Leonard waived his right to remain silent and gave a statement in which he reiterated his version of events.
¶ 7. On October 25, 2005, the Winston County Grand Jury returned an indictment against Leonard and charged him with sexual battery. Leonard pleaded not guilty and proceeded to trial. Ultimately, the jury found Leonard guilty of sexual battery. Consequently, the circuit court sentenced Leonard to fifteen years in the custody of the Mississippi Department of Corrections with five years to serve and ten years of post-release supervision. Leonard appeals.
¶ 8. The Mississippi Office of Indigent Appeals prepared a brief on Leonard's behalf. However, the Office of Indigent Appeals stated:
Counsel for the Appellant hereby represents to the Court pursuant to Lindsey v. State, 939 So.2d 743 (MS 2005), that counsel has diligently searched the procedural and factual history of this criminal action and scoured the record searching for any arguable issues which could be presented to the court on Mr. Leonard's behalf in good faith for appellate review, and upon conclusion, has found none.
Leonard prepared a pro se brief in which he appears to raise five issues: (1) the circuit court lacked jurisdiction to try and sentence him "according to 97-3-95(1)(a) [citation to the record] Discovery Violation," (2) the circuit court erred when it allowed the prosecution to amend the indictment, (3) the circuit court erred when it overruled his motion to dismiss and/or his motion for JNOV, (4) the circuit court violated his right to a speedy trial, and (5) he suffered prejudice because there were more women than men on the jury.
¶ 9. Leonard did not include an argument incident to any of those issues. Leonard included an argument portion with his brief, but he did not address those five issues. Instead, he suggested that he is entitled to bail pending appeal. We can offer no relief in that regard, as Leonard's appeal is now presently before us.
¶ 10. After Leonard filed his pro se brief, the Office of Indigent appeals filed a supplemental brief. The Office of Indigent Appeals did not discuss Leonard's first issue, stated as "THE TRIAL COURT erred because it was without jurisdiction to try to impose sentence according to 97-3-95(1)(a) [record citation] Discovery Violation." Instead, the Office of Indigent Appeals stated, "Counsel cannot locate anything in the record to discuss any discovery violation." However, the Office of Indigent Appeals submitted arguments for Leonard's other four issues. We will begin our analysis of Leonard's remaining four issues, renumbered for clarity.

*28 ANALYSIS
I. WHETHER THE CIRCUIT COURT ERRED WHEN IT ALLOWED THE PROSECUTION TO AMEND THE INDICTMENT AFTER TRIAL.
¶ 11. The original indictment reflected the date of the offense as August 13, 2005. Prior to Leonard's trial, the prosecution moved to amend the indictment to reflect the date of the offense as of August 14, 2005. Leonard objected. The circuit court did not rule on the prosecution's motion at that time. Instead, the circuit court took the matter under advisement. However, the circuit court ultimately granted the prosecution's motion to amend the indictment. Even so, the circuit court did not enter an order amending the indictment. Leonard seems to claim the circuit court erred when it granted the prosecution's motion to amend the indictment. The Office of Indigent Appeals suggests there are three questions within this issue: (1) "whether the state was entitled to amend the indictment," (2) "whether the amendment was `effective due to a lack of an order being entered,'" and (3) "if the amendment was not effective and there is a variance between the date of the offense in the indictment and the date of the offense from the trial evidence, whether such variance is fatal?"
1. Whether the trial court erred when it allowed the prosecution to amend the indictment.
¶ 12. "The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by an appellate court." Davis v. State, 866 So.2d 1107, 1110(¶ 11) (Miss.Ct.App.2003). Trial courts may amend indictments only to correct defects of form. Spears v. State, 942 So.2d 772, 774(¶ 6) (Miss.2006). In contrast, defects of substance must be corrected by the grand jury. Id. The relevant question is whether amending the indictment to correct the date of the offense amounts to a defect of form or of substance. Resolution of that question depends on the facts of the case and the context of a defendant's theory of the case. "[A] change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." Id.
¶ 13. We cannot find that the circuit court erred when it granted the prosecution's motion to amend the indictment to correct the date of the offense. According to URCCC Rule 7.06(5), "An indictment shall . . . include . . . [T]he date and, if applicable, the time at which the offense was alleged to have been committed." URCCC Rule 7.06(5) goes on to state, "Failure to state the correct date shall not render the indictment insufficient[.]" The amendment did not materially alter any fact that was the essence of the offense on the face of the indictment as it originally stood. Further, the amendment did not materially alter Leonard's defense so as to prejudice his case. See, e.g., Davis, 866 So.2d at 1111(¶ 12) (holding that a change in the date of the offenses did not affect the viability of the defendant's defense, that the date was not the essence of the crimes, and, as such, the amendment to the indictment was "not fatal.") Leonard did not raise an alibi defense. Instead, Leonard's defense was based on the premise that he did not touch Jane inappropriately. The date reflected in the indictment had no bearing on Leonard's assertion.
2. Whether the amendment was ineffective due to the lack of an order amending the indictment.
¶ 14. According to Mississippi statutory law, "[t]he order of the court for amendment *29 of the indictment, record, or proceedings provided in Section 99-17-13 shall be entered on the minutes, and shall specify precisely the amendment, and shall be a part of the record." Miss.Code Ann. § 99-17-15 (Rev.2007) (emphasis added). The Mississippi Supreme Court addressed a similar situation in Reed v. State, 506 So.2d 277, 279 (Miss.1987). In Reed, the prosecution was allowed to amend an indictment, but there was no valid order entered on the record that authorized that amendment. Id. at 279.
¶ 15. The Reed Court noted that, "The State is required to make sure that such an order appears in the record and the defense is required to object to the absence of such order if it wishes to preserve this point for appeal." Id. (citing Sturgis v. State, 379 So.2d 534, 536 (Miss.1980)). According to Reed, because the defense attempted to object but was cut short by the trial judge, the prosecution did not ask the trial court to add an order authorizing the amendment, and did not add the order itself, the attempted amendment was ineffective. Id.
¶ 16. In Sturgis, the Mississippi Supreme Court stated:
where the defendant objects to the state's motion to amend and the objection is overruled and the amendment is allowed by the court but no order allowing the amendment is placed on the minutes of the court, a variance between the indictment as originally drawn and the proof is fatal, even though the district attorney made the amendment on the face of the indictment.
Sturgis, 379 So.2d at 536 (citing Shurley v. State, 90 Miss. 415, 43 So. 299 (1907)).
¶ 17. Here, Leonard's attorney objected to the prosecution's motion to amend the indictment and the prosecution did not see to it that the circuit court entered an order allowing the amendment of the indictment. Pursuant to Sturgis, the issue is now whether the variance in the indictment and the proof is fatal to Leonard's case.
3. Whether the variance between the indictment and the proof is fatal to the prosecution's case against Leonard.
¶ 18. According to Section 99-7-5 of the Mississippi Code (Rev.2007):
An indictment for any offense shall not be insufficient for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, nor for stating the time imperfectly, nor for stating the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day, or on a day that never happened, nor for the want of a proper or perfect venue.
Further, and as we recognized above, "Failure to state the correct date shall not render the indictment insufficient[.]" URCCC Rule 7.06(5). The question is whether the variance in the indictment and the proof is a variance of form or substance. See Mahfouz v. State, 303 So.2d 461, 462 (Miss.1974). We reach the same conclusion we reached above. The variance in the indictment and the proof is one of form only. It did not prejudice Leonard's defense. or his theory of the case. Accordingly, we find no merit to this issue.
II. WHETHER THE VERDICT IS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
¶ 19. Posttrial, Leonard filed a "motion for new trial or in the alternative jnov." Leonard did not state a basis for his motion. Instead, Leonard argued, "The Court erred in overruling the Defendant's motion for a directed verdict made at the conclusion of the State's case and renewed *30 at the conclusion of the Defendant's case." Leonard also argued, "The verdict of the jury is contrary to the law and to the overwhelming weight of the evidence in this case." Finally, Leonard claimed, "The interest of justice requires that this Court grant the Defendant a new trial." Leonard did not expand or elaborate during the hearing on his unsuccessful posttrial motions. Aggrieved, Leonard appeals and challenges both the sufficiency and the weight of the evidence.
1. Sufficiency of the evidence.
¶ 20. A motion for JNOV challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). In appeals from an overruled motion for JNOV, we review the evidence in the light most favorable to the prosecution. Id. We must accept the credible evidence consistent with guilt as true, and we give the prosecution the benefit of all favorable inferences that may be reasonably drawn from the evidence. Beckum v. State, 917 So.2d 808, 813(¶ 11) (Miss.Ct.App.2005). "We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Id.
¶ 21. Leonard merely presents a generic and conclusory argument. Though he states that the evidence was insufficient to sustain his conviction, he does not elaborate as to why he considers the evidence insufficient. It is not enough that a defendant move for JNOV on the basis that the prosecution failed to demonstrate a prima facie case. Davis, 866 So.2d at 1113(¶ 21). Such a defendant must specifically state just how the prosecution failed to present a prima facie case. Id. Without such specificity, we will not find the circuit court erred when it overruled such a motion. Id. Lack of specificity notwithstanding, Leonard's argument is meritless. Jane testified that Leonard placed his finger inside her vagina and that he did so against her will.
2. Weight of the evidence.
¶ 22. A motion for a new trial challenges the weight of the evidence. Beckum, 917 So.2d at 813(¶ 14). The circuit court has substantial discretion in ruling on a motion for a new trial. Id. The circuit court should grant the motion only if it would result in an unconscionable injustice if the verdict were allowed to stand. Id.
¶ 23. As we review the circuit court's decision to overrule a motion for a new trial, we must consider the evidence in the light most favorable to the verdict. Id. We are to be mindful that it is the jury's responsibility to resolve matters regarding the weight of the evidence and the credibility of witnesses. Id. We may only reverse the circuit court if it abused its discretion when it overruled the defendant's motion for a new trial. Id.
¶ 24. Again, we must note that Leonard failed to specify the basis for his contention. Leonard argued, "The verdict of the jury is contrary to the law and to the overwhelming weight of the evidence in this case." Leonard also claimed, "The interest of justice requires that this Court grant the Defendant a new trial." A motion for a new trial must be specific. Id. at (¶ 15). This is unquestionably a vague and general statement. Leonard failed to distinguish any particular deficiency in the proof. Leonard also failed to assert just how the verdict is or was contrary to the overwhelming weight of the evidence. Accordingly, this issue is procedurally barred. Id. Procedural bar notwithstanding, Leonard's argument lacks *31 merit. Jane testified that Leonard placed his finger in her vagina against her will. As mentioned, it is the province of the jury to determine the weight and credibility of the evidence, and the jury believed Jane over Leonard.
III. WHETHER THE CIRCUIT COURT VIOLATED LEONARD'S RIGHT TO A SPEEDY TRIAL?
¶ 25. In his pro se brief, Leonard seems to complain that the circuit court violated his right to a speedy trial. Leonard never raised this issue before the circuit court. As such, this issue is procedurally barred. Scott v. State, 829 So.2d 688, 691(¶ 5) (Miss.Ct.App.2002).
IV. WHETHER THE CIRCUIT COURT ERRED WHEN IT ALLOWED LEONARD TO BE TRIED BY A JURY COMPRISED OF MORE WOMEN THAN MEN.
¶ 26. The jury that convicted Leonard consisted of nine women and three men. Leonard seems to claim the circuit court erred when it allowed him to be tried by a jury of more women than men. Leonard did not raise this issue at trial. Therefore, he is procedurally barred from raising this issue on appeal. Spicer v. State, 921 So.2d 292(¶ 62) (Miss.2006). Procedural bar notwithstanding, "proportional representation of [members of cognizable groups] on a jury is not required." Harris v. State, 576 So.2d 1262, 1264 (Miss.1991).
¶ 27. THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS TO SERVE AND TEN YEARS OF POST-RELEASE SUPERVISION, THE FIRST FIVE OF WHICH ARE TO BE SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WINSTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] We use fictitious names to protect the victim's identity.