# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00865-COA

**WADE HAMPTON BLACKWELL JR. A/K/A**                 **APPELLANT**
**WADE H. BLACKWELL JR. A/K/A WADE**
**HAMPTON BLACKWELL**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/30/2017 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MICHAEL W. CROSBY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/21/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, C.J., FOR THE COURT:**

¶1. A jury sitting before the Harrison County Circuit Court found Wade Hampton Blackwell Jr. guilty of two counts of touching a child for lustful purposes. Blackwell appeals and argues that (1) the prosecution should not have been allowed to amend the range of dates listed in the indictment; (2) a prosecution witness should have been precluded from testifying that Blackwell had molested him approximately twenty years earlier; (3) the prosecution made improper comments during its closing argument; (4) the circuit court

should have granted his motion for a continuance after the victim gave unanticipated testimony; and (5) his convictions should be reversed based on cumulative error. Finding no error, we affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. On January 19, 2015, twelve-year-old John[1] revealed to his mother that Blackwell[2] had been inappropriately touching him. John's parents took him to see therapist Jamie Varnado. After talking to John, Varnado told his parents that they should file a report with the Harrison County Sheriff's Department.[3] The next morning, John's mother met with Investigator Alicia Stevison, who arranged a forensic interview.

¶3. On January 29, 2015, Tiffany Lizana conducted John's forensic interview. John reported that Blackwell had reached into John's pants and rubbed his penis and buttocks. John also said that Blackwell's inappropriate touching began during "the summer before last." John would have been ten years old at that time. Later that day, John's mother signed three affidavits that Investigator Stevison prepared and notarized. One affidavit stated that Blackwell had molested a ten-year-old sometime around May 30, 2013. Another stated that he molested an eleven-year-old between May 2013 and May 2014. The third one stated he molested an eleven-year-old between May 2014 and January 2015. Those affidavits resulted

---

[1] We substitute a pseudonym for the victim's name.

[2] Blackwell is John's paternal grandfather. John often spent the night at Blackwell's house.

[3] Because Varnado is a mandated reporter, she also made "a report to DHS and . . . contacted law enforcement." *See* Miss. Code Ann. § 43-21-353(1) (Rev. 2015).

in a warrant for Blackwell's arrest.

¶4. Blackwell was later indicted and charged with two counts of touching a child for lustful purposes. *See* Miss. Code Ann. § 97-5-23(1) (Rev. 2014). Collectively, the indictment alleged that Blackwell lustfully touched John's penis and buttocks between January 1, 2014, and January 19, 2015. Blackwell pled not guilty and opted to go to trial.

¶5. On the day before Blackwell's trial began, the prosecution filed a motion to amend the indictment. More specifically, the prosecution sought to increase the range of dates alleged in the indictment so it covered inappropriate touching that occurred between January 1, 2013, and January 19, 2015. Blackwell filed a written response in opposition to the State's motion and requested a continuance. Blackwell also filed a motion in limine to preclude evidence of a number of things, including the anticipated testimony of a witness whom Blackwell had molested approximately twenty years earlier.

¶6. The parties convened on February 14, 2017, and the circuit court heard several pretrial motions. For purposes of this opinion, the significant events were the circuit court's decisions to grant the prosecution's motion to amend the indictment and to deny Blackwell's motion to prevent the prosecution from introducing evidence that Blackwell previously molested someone else. The remainder of the day was devoted to jury selection.

¶7. The next day, the prosecution called John as its first witness. According to John, Blackwell put his hands down John's pants and rubbed his "front and back privates." John explained that Blackwell had rubbed his buttocks "[s]everal" times, and Blackwell rubbed his penis the last time that Blackwell touched him inappropriately. Although John could not

3

remember specific dates that Blackwell's inappropriate touching occurred, he did not deviate from his representation that Blackwell's inappropriate touching began during the summer of 2013. The video of the forensic interview was played during John's cross-examination testimony; so the jury heard John's January 2015 statement that the inappropriate touching began during "the summer before last."

¶8.    After John testified, the prosecution called his mother and father, Varnado, Emmett Close, Investigator Stevison, and Lizana. All of the witnesses except Close testified regarding their roles in reporting or relaying John's allegations. Over Blackwell's objection, Close testified that Blackwell had molested him approximately twenty years earlier.

¶9.    Blackwell chose not to testify, and he rested without calling any witnesses. Based on defense counsel's opening statement, cross-examinations, and closing arguments, Blackwell's defense theory was that John's allegations were not credible. More specifically, defense counsel suggested that John made up his allegations to get attention or he imagined them because he had been diagnosed with Tourette syndrome which, according to defense counsel, caused him to experience visual and auditory hallucinations.[4]

¶10.   The jury found Blackwell guilty of both counts. The circuit court sentenced Blackwell to fifteen years for the first offense and a consecutive ten-year sentence for the second. Blackwell appeals.

---

[4] Notwithstanding defense counsel's suggestion, there was no evidence that Tourette's causes any form of sensory hallucination. John testified: "There's two different types of Tourette's. There's physical and verbal. I have the physical kind. . . . You twitch your body uncontrollably." John's mother also testified that John had "head tics and hand tics." John denied that he had ever seen or heard anything that did not actually exist.

4

## ANALYSIS

### I.     AMENDED INDICTMENT

¶11.    Blackwell claims the circuit court erred when it allowed the prosecution to amend the dates alleged in the indictment shortly before trial.  "Trial courts may amend indictments only to correct defects of form."  *Leonard v. State*, 972 So. 2d 24, 28 (¶12) (Miss. Ct. App. 2008) (citing *Spears v. State*, 942 So. 2d 772, 774 (¶6) (Miss. 2006)).  Substantial defects "must be corrected by the grand jury."  *Id*.  "A change in the indictment is permissible if it does not materially alter facts [that] are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case."  *Id*.

¶12.    At the time of the offenses and Blackwell's trial, the Uniform Rules of Circuit and County Court still applied to criminal proceedings.[5]    Rule 7.06(5) required that an "indictment . . . include . . . [t]he date, and if applicable, the time at which the offense was alleged to have been committed."  But "a specific date in a child sexual abuse case is not required so long as the defendant is fully and fairly advised of the charge against him." *Jenkins v. State*, 131 So. 3d 544, 549 (¶14) (Miss. 2013) (internal quotation marks omitted).

¶13.    Blackwell reiterates his position that the amendment prejudiced his defense that he never touched John inappropriately, especially not during the dates alleged in the indictment. Blackwell's attorney conceded that he was given a copy of John's forensic interview during discovery, and John had said that Blackwell began inappropriately touching John during

---

[5] Blackwell was tried during February 2017, and the Mississippi Rules of Criminal Procedure became effective on July 1, 2017.

5

"the summer before last," meaning the summer of 2013. Even so, defense counsel argued that because the beginning date in the indictment was January 1, 2014, he essentially had an affirmative defense before the amendment, and he lost that defense after the amendment.

¶14. Blackwell's position overlooks the fact that although John could not remember exactly when Blackwell touched him inappropriately, he said that it began during the summer of 2013 and continued afterward. The jury could have reasonably found Blackwell guilty for touching that occurred during the dates originally listed in the indictment. Plus, Blackwell's defense that he never touched John was equally available before and after the amendment. *See Leonard*, 972 So. 2d at 28 (¶13). Further, Blackwell was not unfairly surprised by the amendment. The prosecution gave defense counsel a copy of John's forensic interview more than a year before Blackwell's trial; so defense counsel had ample notice of John's statement that Blackwell began touching him during "the summer before last," meaning the summer of 2013.

¶15. On a different note, Blackwell also argues that the amendment was improper because the grand jury had refused to charge Blackwell with inappropriately touching John before January 1, 2014. Blackwell's argument is based on the affidavits that John's mother signed on January 29, 2015. Blackwell assumes that the prosecution presented the affidavits to the grand jury and that the grand jury returned the two counts in the indictment based on the affidavits.

¶16. Defense counsel did not make this argument during the pretrial hearing on the prosecution's motion to amend the indictment. In fact, defense counsel did not make a

6

similar argument to the circuit court until the next morning. Assuming for the sake of discussion that defense counsel's day-late argument was sufficient to preserve this claim, we would still find it meritless. There is no indication that Blackwell was given any information about what occurred during the grand jury proceedings. Aside from defense counsel's speculation and conjecture, nothing suggests that the prosecution presented the affidavits to the grand jury. Grand jury proceedings are generally secret. Miss. Code Ann. § 13-5-61 (Rev. 2012); URCCC 7.04. We do not know what the prosecution presented to the grand jury, and neither does Blackwell's attorney. Because the record simply does not support defense counsel's claim that the grand jury "refused" to charge Blackwell with conduct that occurred before January 1, 2014, we would find that this issue must fail even if it had been properly preserved.

## II. PRIOR BAD ACTS

¶17. Next, Blackwell claims that the circuit court erred when it allowed Close to testify that Blackwell had touched him inappropriately approximately twenty years earlier. According to Blackwell, Close's testimony should have been precluded because he and John did not describe similar allegations, and Close's testimony was impermissible under Rules 404(b) and 403 of the Mississippi Rules of Evidence. Finally, Blackwell argues that the circuit judge did not adequately articulate his reasoning that Close's testimony was admissible. "We review the circuit court's admission or exclusion of evidence for abuse of discretion." *Shoemaker v. State*, 256 So. 3d 604, 613 (¶35) (Miss. Ct. App. 2018).

¶18. The prosecution proffered Close's testimony during the pretrial hearing on

Blackwell's motion in limine. Close said that he "grew up poor"; so he started working on Blackwell's shrimp boat during a summer break when he was around twelve years old.[6] One night when Close was sleeping in his bunk, he woke up when Blackwell began rubbing his (Close's) thigh and masturbating. Close later moved into Blackwell's house. Close said that Blackwell continued to touch him inappropriately. More specifically, Close said that Blackwell touched his penis and his buttocks. Close never told anyone because he was embarrassed.

¶19. Before Close's proffer, the prosecution said that his testimony would show Blackwell's "sexual abuse was not an accident or a mistake. It also shows [Blackwell's] opportunity and his intent and plans." The prosecution later added:

> This shows that this defendant preys on younger boys living in his home who he has contact with and access to. It also shows his intent and plan in this case with [John]. It shows his motive, his MO, so to speak, which 404(b) allows, is this desire to partake in pedophile sexual activities with young or developing male children.
>
> It also shows his means to accomplish that on occasions took place in the home or away from the home on a boat where he had alone time with these children that were living in his house. And that the defendant is taking advantage of this . . . relationship where the defendant is the one who should be leading these children and grooming them into adults in society and [he] takes advantage of that, takes advantage of his position.

¶20. After the proffer, defense counsel argued that Close's anticipated testimony was unnecessary because John was capable of describing his allegations. Counsel also argued

---

[6] Close was thirty-five years old when he testified. He did not know exactly how old he had been when Blackwell began touching him inappropriately. Once during his proffer, he said he had been between twelve and fourteen. He later said he had been twelve or thirteen. When he testified before the jury, he said he may have been eleven or twelve.

that Close and John did not describe similar abuse, and the probative value of Close's testimony did not outweigh its prejudicial effect. The circuit court held:

> All right. 404(b), dealing with character evidence, evidence of a crime, wrongdoing[,] or other act is not admissible to prove a person's character in order to prove that on a particular occasion that person acted in accordance with their character. However, two, permitted uses, this evidence may be admissible for other purposes such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
>
> It does not have to be the exact type of activity in every regard, but it must pass through the filter of [Rule] 403 because [it] says relevant evidence may be excluded if it is more prejudicial than probative. Court's finding that it is more probative than prejudicial. . . . It will be allowed in. You have your objection.

Close's subsequent testimony before the jury was consistent with his proffer, and he added some additional details that have no bearing on this issue.

¶21. Rule 404(b) prohibits the use of prior-bad-acts evidence to prove a person's character to show that he acted in conformity therewith. However, Rule 404(b) permits the use of such evidence to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Before admitting prior-bad-acts evidence, a trial judge should filter the evidence through Mississippi Rule of Evidence 403 and determine whether the evidence's probative value outweighs its prejudicial effect to the defendant. Where the evidence's probative value outweighs its prejudice, the trial judge may admit the evidence. In the context of child-sexual-abuse cases, even evidence of remote past sexual-abuse allegations may be admitted for a proper purpose under Rule 404(b), especially when coupled with an appropriate limiting instruction to the jury.

*Shoemaker*, 256 So. 3d at 613-14 (¶36) (citations omitted).

¶22. In arguing that the circuit court erred when it allowed the prosecution to present

Close's testimony, Blackwell relies heavily on what the Mississippi Supreme Court has

9

recently described as this Court's "sharply divided"[7] decision in *White v. State*, 228 So. 3d 893 (Miss. Ct. App. 2017). The lead opinion reversed Curtis White's convictions for gratification of lust and statutory rape and remanded the case for a new trial because a circuit court "committed a plethora of reversible errors" and the "circuit court repeatedly abused its discretion and violated White's constitutional rights [to] due process and a fair trial by an impartial jury . . . ." *Id*. at 896-97 (¶1). Among the "plethora" of errors was the circuit court's decision that a witness could testify, over the defendant's objection, that nine years earlier she had an "affair with [the defendant that was] based on . . . 'mutual flirtation' . . . ." *Id*. at 901 (¶20). The defendant had been twenty-four years old at the time of the "affair," and the witness had been "between fifteen and seventeen."[8] *Id*.

¶23. The lead opinion held that the defendant's "affair [was] . . . not probative of his plan, motive, intent, or opportunity in regard to [the thirteen year-old victim]" and "[t]he two scenarios [we]re hardly factually similar . . . ." *Id*. at 902 (¶20). Consequently, the lead opinion held that "the circuit court abused its discretion in admitting . . . highly prejudicial and minimally probative [evidence of a] nine-year-old statutory[ ]rape . . . ." *Id*. at (¶22). The lead opinion also held that the circuit court did not adequately explain its decision when it merely agreed with the prosecution that the witness's testimony was admissible under

---

[7] *McGrath v. State*, No. 2017-KA-01184-SCT, 2019 WL 1722890, at *8 (¶17) (Miss. Apr. 18, 2019). In *White*, one judge joined the author of the lead opinion, three judges concurred in part and in the result, and four judges dissented. One judge did not participate.

[8] As noted in *White*, "[i]t was unclear how old White was when the affair began, but the record show[ed] that it lasted for approximately two years, ending when [the witness] was seventeen years old." *Id*. at n.4.

10

every contemplated basis in Rule 404(b) and said that the probative value of the evidence outweighed its prejudicial effect." *Id*. at (¶21-22).

¶24.    Notwithstanding the outcome in *White*, it is well settled that "evidence of a sexual offense, other than the one charged, [that] involves a [different] victim" is not per se error "if properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately[ ]drafted limiting or cautionary instruction to the jury." *Derouen v. State*, 994 So. 2d 748, 756 (¶20) (Miss. 2008). "The purposes listed in Rule 404(b) are not exhaustive; they simply are examples of noncharacter purposes for which evidence of other crimes, wrongs, or acts may be admitted." *Boggs v. State*, 188 So. 3d 515, 519 (¶11) (Miss. 2016) (quoting *Green v. State*, 89 So. 3d 543, 549 n.12 (Miss. 2012)). Prior abuse of a different victim may be admissible under Rule 404(b) if it demonstrates that the "'defendant's means of accomplishing pedophilic sexual activities on past occasions bears substantial resemblance to each other and with the present offense,' which served as proof of motive and a common plan or scheme." *Id*. at (¶13) (quoting *Gore v. State*, 37 So. 3d 1178, 1186 (¶18) (Miss. 2010)). And "'overwhelming similarities' between prior instances of sexual misconduct and the charged offense 'undeniably bring the testimony of these other victims within the purview of admissibility under Rule 404(b).'" *Id*. at (¶14) (quoting *Green*, 89 So. 3d at 550 (¶17)). The Mississippi Supreme Court has also held that a defendant's prior sexual abuse of a different victim may be "admissible to prove . . . motive" in the form of a "seemingly uncontrollable desire to partake in pedophilic sexual activities with young and

11

developing [similarly gendered] juveniles . . . ." *Id*. at 521 (¶18).[9]

¶25. This case is not like the unique circumstances in *White*. As mentioned above, Blackwell's defense theory was to cast doubt on John's credibility. Counsel for Blackwell consistently suggested that John imagined that Blackwell had touched him inappropriately or that John made up the allegations to get his mother's attention. Close's testimony tended to prove that John was not mistaken about his allegations, and Blackwell had a common plan to take advantage of his proximity to a young developing boy and gratify his lust by touching the victim's penis and buttocks. The prosecution was also obligated to prove that Blackwell inappropriately touched John with lustful intent. *See* Miss. Code Ann. § 97-5-23(1). It was within the circuit court's discretion to find that Close's testimony was admissible for those purposes, and that its probative value outweighed its prejudicial effect.[10] We further note that the circuit court gave an appropriate limiting instruction. Finally, we find that the circuit court's omission of an express, on-the-record analysis regarding admissibility under Rules 404(b) and 403 is harmless under the circumstances. *See Alford*

---

[9] This ruling has drawn criticism that such a purpose is too close to propensity evidence. *Id*. at 525 (¶¶28-31) (Dickinson, J., dissenting).

[10] It was within the circuit court's discretion to find that Close's testimony was admissible despite the fact that he described abuse that had occurred around twenty years earlier. In *Gore*, 37 So. 3d at 1186-87 (¶19), our supreme court approvingly discussed a number of decisions from other states that all stand for the general principle that evidence of prior abuse of a different victim was not inadmissible simply because it was relatively old. And in *Young*, 106 So. 3d at 814 (¶1), this Court upheld a decision that a prior victim could testify about abuse that had happened approximately twenty years earlier. Similarly, in *Harris v. State*, 165 So. 3d 473, 475-77 (¶¶6-10) (Miss. Ct. App. 2015), this Court upheld a decision that two prior victims could describe abuse that had happened approximately thirty years earlier.

*v. State*, 238 So. 3d 11, 14 (¶9) (Miss. Ct. App. 2018) (quoting *Archer v. State*, 118 So. 3d 612, 625-26 (¶57) (Miss. Ct. App. 2012)).

### III. COMMENTS DURING CLOSING ARGUMENT

¶26. Blackwell claims the prosecution made improper and reversible comments during its closing argument. First, Blackwell says the prosecution should not have said that there was no evidence that John was angry at Blackwell because Blackwell would not let John have frozen yogurt.[11] Second, Blackwell says the prosecution should not have referred to him as a child molester. But there was no contemporaneous objection to either comment. "As an appellate court, we have no original jurisdiction to review this issue." *Gray v. State*, 202 So. 3d 243, 261 (¶70) (Miss. Ct. App. 2015). Blackwell is procedurally barred from raising these claims for the first time on appeal. *See id*. at 261-62 (¶70). And we do not find that the comments at issue were "so inflammatory that the trial judge should have objected on his own motion." *O'Connor v. State*, 120 So. 3d 390, 399 (¶26) (Miss. 2013).

¶27. Procedural bar notwithstanding, Blackwell's claims are meritless. He first argues that it was improper for the prosecution to say that there was no evidence that John was angry because Blackwell would not let him have frozen yogurt for dessert—the suggestion seems to be that John retaliated against Blackwell by making up his allegations. Defense counsel argues that there could have been such evidence if the prosecution had called the witness

---

[11] During his opening statement, defense counsel said that the jury would hear evidence that John said Blackwell had touched him inappropriately after Blackwell did not let John have frozen yogurt for dessert. Defense counsel expected a prosecution witness to present that testimony, but the prosecution ultimately chose not to call that witness and defense counsel did not attempt to call him.

who was expected to present it and the witness testified consistent with defense counsel's expectation. But the prosecution's comment was factually accurate; the jury did not hear any evidence that John was angry because he was denied frozen yogurt. The comment at issue was also in response to defense counsel's fruitless cross-examination of the prosecution's witnesses. In short, it was not improper for the prosecution to point out that the jury had not heard any evidence to support defense counsel's implication.

¶28. As for Blackwell's complaint about the prosecution's "child molester" comment, he again relies heavily on *White*. That case held that reversible error also resulted from "the cumulative effect of the otherwise harmless" improper comments that the prosecution made "[t]hroughout [the] trial." *White*, 228 So. 3d at 905 (¶30). Despite the lack of an objection to "a litany of prejudicial comments" during the prosecution's closing argument, the lead opinion held that cumulatively reversible-prosecutorial misconduct stemmed in part from the fact that the prosecution called the defendant a pedophile three times and referred to him once as a child molester. *Id*. at 910-11 (¶¶52-55). The lead opinion also said that calling the defendant a pedophile was "plain error that warrant[ed] reversal standing alone." *Id*. at 911 (¶55). But in *Case v. State*, 187 So. 3d 177, 184 (¶¶24-25) (Miss. Ct. App. 2015), we held that an appellant who had been convicted of two counts of fondling a child was procedurally barred from arguing for the first time on appeal that the prosecution improperly called him a pedophile four times during its closing argument. And even if the claim had not been procedurally barred, it would have been meritless because "the prosecutor's comments, taken in context, show[ed] that the prosecutor was commenting on the facts

14

presented in the evidence." *Id*. at (¶26).

¶29. Again, this case is different from *White*. Neither of the prosecutors ever called Blackwell a pedophile in front of the jury. Instead, one of the prosecutors said that Blackwell was "a child molester. He touched [John], rubbed . . . his penis, rubbed his butt multiple times . . . ." Later, the prosecutor said:

> In voir dire we talked about stereotyping people and you can't look at someone and say, ["]oh, this is a child molester["] because they come from all walks of life. But now that we've heard all the testimony and the evidence, I submit to you that, yes, look at this defendant, look at him. That's what [defense counsel] asked you to do in opening. This is a child molester.

"Attorneys on both sides are generally afforded broad latitude during closing arguments so long as counsel in his address to the jury keeps fairly within the evidence and the issues involved." *Id*. Viewed in appropriate context, the prosecution was arguing that Blackwell was guilty of the charges he faced—two counts of gratification of lust by improperly touching a child. Instead of using that language, the prosecution used a shorter, more familiar synonym for the crime. Said differently, the comments at issue were tethered to the legal and factual circumstances of the case, so they were "fair argument based upon the testimony and evidence . . . ." *Divine v. State*, 947 So. 2d 1017, 1022 (¶12) (Miss. Ct. App. 2007) (upholding a decision denying a motion for mistrial after a prosecutor referred to a defendant as a sexual predator and a child molester during closing argument in a trial for sexual battery of a minor). Thus, we would find this issue meritless even if it were not procedurally barred.

## IV. CONTINUANCE

15

¶30. During the forensic interview, John said that Blackwell's inappropriate touching occurred in Blackwell's living room. During John's direct testimony, he said that Blackwell's inappropriate touching occurred in the living room and "[i]n the house, just random places." On cross-examination, John testified that it occurred in the living room and in Blackwell's bedroom. When defense counsel asked John if he had ever told anyone about inappropriate touching in Blackwell's living room, John said that he had told one of the prosecutors that, but he could not remember when. Defense counsel told the circuit judge that he had "a motion," and he "ask[ed] permission to make it so we don't delay." The circuit judge responded: "At the appropriate time."

¶31. After the victim finished testifying, defense counsel complained that the prosecution had not given him notice that John would testify that some of the inappropriate touching had occurred in Blackwell's bedroom. According to defense counsel, John's unexpected testimony undermined his ability to argue that John's allegations were not credible because it would be unlikely for Blackwell to molest the victim in a public area like his living room; especially since the victim's two siblings and Blackwell's wife would have likely been in Blackwell's house at the same time as Blackwell and the victim. Defense counsel concluded by asking the circuit court to "begin the *Box* proceedings"[12] so he could decide "whether . . . [he] would move for a mistrial or a continuance . . . ."

¶32. The prosecutor responded that she did not remember the victim telling her that Blackwell had molested him in Blackwell's bedroom, and *Box* was moot because defense

_____

[12] *Box v. State*, 437 So. 2d 19, 23-24 (Miss. 1983) (Robertson, J., specially concurring); *see also* URCCC 9.04(I) (supplanted by MRCrP 17.9(b)).

16

counsel had finished cross-examining the victim. The prosecutor also noted that when the forensic interviewer asked the victim whether Blackwell had touched him in any other places, it was unclear whether the victim understood that to mean other places on his body. Ultimately, the circuit court held:

> The [S]tate cannot possibly give every word that's going to come out of the victim's mouth when [he] testif[ies]. The defendant is on notice of what the charges are. Simply saying it happened on the couch or it happened in the bedroom is all in the same home. This doesn't change anything. I don't even feel like it's a *Box* violation, much less a valid motion for a mistrial, so [there is] no violation and there is no mistrial. It's denied.

¶33. On appeal, Blackwell claims the circuit court committed reversible error "because a material discovery issue in which the known information was withheld from the defense, and when the violation occurred, the trial judge refused to follow the *Box* procedures . . . ." (Italics added). He also submits that "[i]t was an important part of the defense to argue that it was not likely that [Blackwell] would do something so offensive in a public place." Although Blackwell does not expressly argue that the circuit court should have granted a mistrial, we interpret that to be his position; especially since it would have been pointless for the circuit judge to grant a continuance *after* defense counsel finished cross-examining the victim. We review "a trial court's denial of a motion for mistrial for abuse of discretion." *Hurst v. State*, 195 So. 3d 736, 744 (¶20) (Miss. 2016).

¶34. First and foremost, it is questionable whether defense counsel moved for a mistrial. He certainly complained about a perceived discovery violation, but he did not go so far as to move for a mistrial or even for a continuance. Even so, the circuit court interpreted defense counsel's complaints as a motion for a mistrial, because the circuit court ultimately

17

found that defense counsel was not entitled to one.

¶35. In any event, the *Box* procedure does not apply to this case. At the time of Blackwell's trial, the *Box* procedure was still delineated in Rule 9.04(I) of the Uniform Rules of Circuit and County Court. It provided that *if the prosecution attempts to introduce undisclosed evidence* and the defense objects, the circuit court must:

> 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and

> 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

¶36. That procedure applies "when the State attempts to enter previously undisclosed evidence over the defendant's objection." *Terrell v. State*, 237 So. 3d 717, 730 (¶51) (Miss. 2018). As the State notes, the prosecution did not introduce evidence that Blackwell's inappropriate touching occurred in his living room *and* his bedroom. Defense counsel elicited that testimony when he cross-examined the victim. And as the prosecution discussed at trial, the victim's forensic interview was ambiguous regarding whether his response that Blackwell had not touched him anywhere else referred to anywhere else on his body, or anywhere else in Blackwell's house. To the extent that Blackwell actually moved for a mistrial, it was within the circuit court's discretion to deny that request.

## V. CUMULATIVE ERROR

¶37. Finally, Blackwell argues that his conviction should be reversed "especially with

respect to the error of prosecutorial misconduct for which there was no contemporaneous objection" based on what he describes as the "cumulative error rule."

> The cumulative error doctrine stems from the doctrine of harmless error which holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial. However, where there was no error in part, there can be no reversible error to the whole.

*Jackson v. State*, 263 So. 3d 1003, 1018 (¶47) (Miss. Ct. App. 2018) (quoting *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007)). Having found no errors, harmless or otherwise, there was no cumulative error. We affirm the circuit court's judgment.

¶38. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McDONALD, JJ.**

**McCARTY, J., DISSENTING:**

¶39. With all due respect, I cannot agree with the majority's finding that the circuit court committed harmless error when it allowed Close's witness testimony and the State to call Blackwell a child molester during closing arguments.

¶40. This case perfectly represents exactly why we have the Mississippi Rules of Evidence—especially Rule 403—to guard against conviction by social pressure or disgust. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." M.R.E. 403. Allowing the witness's decades-old testimony was prejudice per se.

¶41. "Under Rule 404(b), evidence of crimes, wrongs, or acts is not admissible to prove

19

the character of a person in order to show that he acted in conformity therewith." *White v. State*, 228 So. 3d 893, 901 (¶16) (Miss. Ct. App. 2017). "[T]he prosecution may not introduce prior bad acts for the purpose of showing that the defendant had a propensity to engage in such conduct, that is, because he had done things like this before, he probably did it this time." *Cole v. State*, 126 So. 3d 880, 885 (¶20) (Miss. 2013). "The reason for the rule is to prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged." *Mitchell v. State*, 110 So. 3d 732, 734 (¶10) (Miss. 2013).

¶42. There are exceptions in which a defendant's prior bad act may be admissible. These are when the State submits evidence in order to show one of the following: motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. M.R.E. 404(b)(2). None of these exceptions apply in the present case. I can find no other reason to introduce Close's testimony other than to prejudice the jury. This is a classic example of inadmissible propensity evidence.

¶43. This case closely tracks *White v. State*, 228 So. 3d—no matter the attempts to distinguish it. In *White*, the State submitted witness testimony of a nine-year-old allegation of sexual offense by the defendant at his current trial. *White*, 228 So. 3d at 901(¶18). On appeal, this Court held that the witness's testimony was not probative of the defendant's plan, motive, intent, or opportunity and therefore was inadmissible. *Id*. at 902 (¶22). The same result should be reached here today. Just as in *White*, the circuit court here abused its discretion by admitting highly prejudicial and minimally probative evidence of an uncharged

20

twenty-year-old offense. I am certain that the jury convicted Blackwell due to the ancient allegations.

¶44. Just as in *White*, the trial court also failed to make on-the-record findings. "When the trial court admits other bad acts evidence under Rule 404(b), it should make an on-the-record Rule 403 finding that the probative value is not substantially outweighed by the danger of unfair prejudice." *Id*.

¶45. In *White* this court took issue with the circuit court neglecting to specify what, under 404(b), made the defendant's prior bad act admissible. *Id*. We said that the circuit court's general explanation of the rule was not adequate. *Id*. Just as in *White*, the circuit court here did not adequately explain its decision. It merely agreed with the prosecution and said the evidence was admissible under Rule 404(b).

¶46. "The proposition that an uncharged, factually dissimilar, and almost [two-]decade-old offense contains probative value that substantially outweighs the threat of unfair prejudice to the defendant's constitutional rights is certainly a stretch." *White*, 228 So. 3d at 901(¶18).

¶47. In addition to the improper witness testimony, Blackwell's case also warrants reversal based on the State's wildly out-of-bounds closing argument. The majority finds no error because the State never referred to Blackwell as a pedophile. Technically, this is true. What happened was way worse because the State called the defendant a child molester not once, but twice:

> But now that we've heard all the testimony and the evidence, I submit to you that, yes, look at this defendant, look at him. That's what they asked you to do in opening. This is a child molester.

. . . .

And I'll tell you what, there is one explanation and it's a much simpler one.
This defendant is a child molester.

¶48.   This is the sort of statement that shocks the conscious and prevents a defendant from receiving a fair trial.   Cases should be tried based on their facts—not innuendo or fearmongering.

¶49.   For the forgoing reasons, I respectfully dissent.

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**