The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: February 19, 2024

**NO. S-1-SC-38941**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**RUDOLF AMADOR,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Melissa A. Kennelly, District Judge**


Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Van Snow, Assistant Attorney General
Albuquerque, NM

for Respondent

**OPINION**

**VIGIL, Justice.**

{1}     Defendant Rudolph Amador was convicted of two counts of criminal sexual contact of a minor, contrary to NMSA 1978, Section 30-9-13(B)(1) (2003), and one count of child abuse, contrary to NMSA 1978, Section 30-6-1(D) (2009). The district court sua sponte filed a motion for a new trial, citing prosecutorial misconduct and ineffective assistance of counsel. After hearing argument, the district court ultimately ordered a new trial based on four instances of prosecutorial misconduct, but denied Defendant's argument that the retrial was barred. Defendant was retried and convicted on all three counts.

{2}     Defendant appealed to the Court of Appeals, arguing that retrial was barred by double jeopardy under *State v. Breit*, 1996-NMSC-067, 122 N.M. 655, 930 P.2d 792, and that he received ineffective assistance of counsel. Docketing Statement, *State v. Amador*, A-1-CA-38665 (N.M. Ct. App. Dec. 27, 2019). The Court of Appeals rejected Defendant's arguments and affirmed his convictions. *State v. Amador*, A-1-CA-38665, mem. op. ¶ 1 (N.M. Ct. App. July 19, 2021) (nonprecedential).

{3}   We granted Defendant's petition for writ of certiorari on both issues. We reverse the Court of Appeals and hold that Defendant's second trial was barred by double jeopardy under Article II, Section 15 of the New Mexico Constitution.

## I.   BACKGROUND

## A.   District Court

{4}   The charges arose from allegations that Defendant sexually abused his friend's eleven-year-old daughter when Defendant spent the night at his friend's house. The child's father testified that he was friends with Defendant, had known him for more than twenty years, and had invited Defendant to stay at his house for a couple of nights. The father also testified that his eleven-year-old daughter stayed with him on the second night.

{5}   The child testified that she had her own bedroom, which she slept in that night. She woke up to Defendant touching her "front private part" and "back private part." She clarified that the contact to her vagina and buttocks was skin-to-skin, under her underwear. Defendant left her room once she started to wiggle and move away from him. After Defendant left her room, she ran to her father's room screaming, woke her father, and told him what had happened.

{6}   The father testified that after his daughter woke him up and when he became aware of what had happened, he confronted Defendant, who was eating a corndog

in the dark in the kitchen. Defendant denied touching the child. However, after confirming what had happened with his daughter, the father kicked Defendant out of the house.

{7} After the State rested, the prosecutor informed the court and defense counsel that he planned to impeach Defendant with a prior conviction for child abuse, should Defendant take the stand. Defense counsel agreed that Defendant had an "ancient prior," but she was unsure whether it fell within the ten-year window under Rule 11-609 NMRA. The prosecutor then stated that the prior conviction was a felony and fell within the ten-year window. The judge told the prosecutor he could impeach Defendant with the prior conviction, but he could not get into the specific facts of the offense.

{8} When Defendant took the stand, defense counsel opted to bring up the prior conviction during her direct examination by asking if he had "ever been charged with a felony." Defendant responded that he had been charged with child abuse in 2009. He explained that the charge was based on a fight with his seventeen-year-old stepson and that he ended up taking a plea deal, serving three years of probation. Defendant also testified that his girlfriend had three daughters, and that he had never been accused of any felonies involving them. Concerning his friend's daughter, Defendant testified that he had known her all her life and that he would never do

3

anything like what he was accused of doing. He denied entering her room and touching her. In his closing argument at the end of the evidence, the prosecutor began with:

> Basically, what this case is about, I mean, is the criminal sexual contact of a minor. Defendant says he didn't do it. Okay, and frankly, I think, you know, for someone who is not a *pedophile*, it's hard to understand why any grown man would touch a child. Isn't it? When you think about it, how . . . why would any grown man have any sexual interest in a child? It seems incomprehensible, but we know it happens all the time, don't we? I mean something we see a lot in the media, and even, I'm a lifelong Catholic, I love the Catholic Church, and even in an institution such as the Catholic Church, you know, as hard as it is to believe, as painful, I think as a Catholic to see, you know we have priests, even priests are now abusing these children. Sometimes, these priests go for years and years and years before they are caught. Umm . . . you know they have access to these kids, and they have . . .

(emphasis added). The judge cut off the closing and directed the parties to approach the bench. The judge informed the prosecutor that the argument was improper and that allowing it to go further could result in reversible error. The prosecutor continued his closing argument,

> Uh…so…uh…Defendant said he never, he didn't do it, and then he cites, uh, then he says that he has three, three stepdaughters. We don't know, that's just what he says. And he did admit that he was a convicted, you know, felon. That's just what he says. That he didn't, he never touched his stepdaughters, we don't know . . .

Then, the prosecutor summarized the relevant evidence. Next, the prosecutor said, "This Defendant, here, this guy here, he touched a little eleven-year-old [girl's]

vagina and buttocks, for whatever reason—because he's a *pedophile*, [unintelligible] to do something like that. Who knows what a *pedophile* looks like—we don't know, as we all know, *pedophiles* come in all shapes and forms" (emphasis added). The prosecutor then sought to describe the reasonable doubt standard:

> Reasonable doubt is the sort of doubt you would use in making important decisions about important things in your life. Buy a car, buy a house, or what have you. In relation to this case, I would ask you to consider whether you feel safe enough, based on what you heard today, to let this guy stay in a house with another child.

Defense counsel failed to object at any point.

{9} Defense counsel gave her closing argument. She argued that there was no testimony to support the use of the word "pedophile" and that the State was bringing up the "ugly word" and Catholic priests in an attempt to get the jury to view Defendant in such a way. Defense counsel then argued that the child's testimony was inconsistent: she was coached, could have been dreaming, and did not testify as though she was traumatized—"not an ounce of nerves."

{10} In rebuttal, the prosecutor again referenced Defendant's stepdaughters by asking: "Where are the three stepdaughters?" The judge again asked counsel to approach the bench. The judge told the prosecutor, "You cannot comment [on] his failure to present evidence." After addressing the defense counsel's arguments, the prosecutor moved on to discuss motive: "The motives of a *pedophile*, it is an

inexplicable, a nonpedophile may think, why do they do things like that?" (emphasis added). Defense counsel objected, and the judge told the prosecutor that he was "walking very close to asking [D]efendant to prove himself innocent, that is not his burden, and you can't refer to him—you're not to refer to him as a pedophile again." The prosecutor returned to his argument, focusing again on the definition of reasonable doubt. Again, he asked the jurors whether they "would want a little girl alone in the house with the defendant."

{11}     After the jury returned guilty verdicts for two counts of criminal sexual contact of a minor and one count of child abuse, the court asked the parties if they would like to proceed directly to sentencing. Defense counsel said there was something that needed to be clarified before moving forward:

> Defense counsel: [Defendant] only has the one prior it was, it was either a conditional discharge or a deferred and so I think that's something we need to clear up before we move forward and uh . . .
>
> Prosecutor: It was a conditional discharge.
>
> Defense counsel: It was?
>
> Prosecutor: Yeah.
>
> Judge: And he successfully completed that?
>
> Defense counsel: Yes.
>
> Prosecutor: I can't remember now, I think I have the, I gave her the information.

Defendant: Yes, he did.

Prosecutor: I think there was, there was some issue, but I think he . . .

Judge: You didn't tell me that, and you used it as a . . .

Prosecutor: I think he did complete it, uh . . . the conditional discharge [unintelligible].

Defendant: [unintelligible]

Prosecutor: I'm not sure. I don't remember but . . .

Judge: You represented to the court that it was a prior conviction, and for that reason, I allowed you to—and [defense counsel], you didn't object.

Defense counsel: I didn't know it was a conditional discharge until he told . . .

Judge: I allowed you to use it as a, as a, as impeachment evidence.

Prosecutor: Okay, well I'm not sure, I . . . I . . . I guess, uh, I didn't realize, uh.

Judge: Wow.

Prosecutor: And I can't remember. It's been some time since I looked at it but uh . . . closely, but I think it may, it may have got violated, and I'm not sure your honor at this point. I'm not sure.

Judge: Well, what you represented to the court was that he had a prior conviction that you were going to impeach him with.

Prosecutor: Right, and that's why. . .

Judge: And it's not a conviction if it is a completed conditional discharge. When they plead guilty, they are told if you successfully complete this, it does not count as a conviction.

Prosecutor: Okay.

Judge: And you represented to the court, you stand up here and told me as an officer of the court that he had a prior conviction and now you are telling me two hours later you're not really sure?

Prosecutor: Uh. . .

Judge: Mr. [prosecutor]? You're not really sure? You wouldn't know?

Prosecutor: I apologize. I guess I didn't think.

Judge: Apologize? You just got a conviction, so you used something improperly to obtain a conviction.

Prosecutor: Okay, and I guess I . . . that was my mistake and I [inaudible].

Defense counsel stated that she was "tempted . . . to ask the court for a mistrial" because the information on the conditional discharge was not disclosed. The judge then admonished defense counsel: "But you conceded that he had a prior conviction. We stood up here and talked, and had a conference, and you conceded he had a prior conviction, and now, two hours later, all of a sudden, oh well, it wasn't really a conviction." The prosecutor then said he "thought a conditional discharge would count as a prior conviction" for impeachment purposes. The judge responded, "No

it's not. It's not a conviction for anything. It's considered not a conviction if it's successfully completed."

{12} Concerned with the "prosecutorial misconduct" and "visibly ineffective assistance of counsel," the judge filed a sua sponte motion for a new trial—enumerating the following specific instances of prosecutorial misconduct and ineffective assistance of counsel:

a. When the prosecutor learned that Defendant would testify[,] he represented to the court and defense counsel that Defendant had a prior conviction for child abuse which he would use for impeachment purposes. Defense counsel did not object. When Defendant testified, [defense] counsel elicited the fact that Defendant had a prior conviction for child abuse[,] and defendant gave his version of the events that led to the "conviction." However, after trial and after the jury had returned its guilty verdict, defense counsel advised the Court that Defendant did not[,] in fact[,] have a prior conviction for child abuse, but rather a conditional discharge where the Defendant had successfully completed his probation. The prosecutor stated that he thought a conditional discharge was synonymous with a prior conviction, which it is not.

b. During closing argument the prosecutor repeatedly referred to Defendant as a "pedophile" and made reference to the Catholic Church clergy abuse scandal. The prosecutor also referred to himself as a Catholic. The prosecutor argued that normal people like himself and the jurors could not understand why pedophiles did what they did. Defense counsel failed to object to any of these arguments.

c. During his closing argument[,] the prosecutor stated that the [D]efendant should have brought in certain evidence if he wanted the jurors to believe he was not guilty. This was an impermissible shift in the burden of proof.

d. Defense counsel was patently unprepared for trial.

e. During the course of the trial all of the prosecution witnesses referred to . . . [D]efendant as "the defendant." They did not refer to him by name even though he was a family friend of 20 years. The prosecution had obviously instructed the witnesses, including the 12-year-old child [and alleged victim], to refer to him as the defendant and not by his name. Defense counsel never objected.

Citing *State v. Grogan*, the judge emphasized her judicial "duty to maintain the integrity of the court" and set a hearing on the motion for a new trial. 2007-NMSC-039, ¶ 10, 142 N.M. 107, 163 P.3d 494.

{13} The day before the hearing on the motion, Defendant moved for a mistrial and to bar reprosecution under *Breit*, 1996-NMSC-067. At the hearing, the State, represented by new counsel, did not oppose a new trial but opposed a bar to retrial. In the State's response to Defendant's motion, the State argued that the prosecutorial misconduct by the initial prosecutor did "not rise to the level of the most severe prosecutorial transgressions." The judge retired before ruling on the motion.

{14} The new judge who presided over Defendant's case reviewed the audio recording of Defendant's trial and the hearing on the sua sponte motion for a new trial. Similarly concerned that the prosecutor's misconduct undermined the court's integrity, the judge ordered a new trial based on four instances of prosecutorial misconduct in closing arguments: (1) the statement that Defendant "did admit he was a convicted felon," (2) the statement that Defendant "touched a little eleven-

10

year-old vagina and buttocks for whatever reasons—because he's a pedophile," (3) the statements about the reasonable doubt standard "effectively inverted the reasonable doubt standard by implying to the jury that they should convict Defendant if they had a reasonable doubt as to his innocence," and (4) the line of argument about the Catholic Church and the prosecutor's faith. Regarding ineffective assistance of counsel, the judge noted that defense counsel did not object to the statements made or request any curative instructions.

{15} As to Defendant's double jeopardy challenge, the court determined that while the first two prongs of the *Breit* test were met, the third prong was not. The court found that "there is no indication that the prosecutor intended to provoke a mistrial—his conduct was simply overreaching and overzealous." Thus, the issue boiled down to whether the prosecutor acted in willful disregard that a mistrial would result. The court found that because the prosecutor stopped his line of argument when admonished by the court and because his misconduct was primarily confined to the closing argument, his actions were "reckless and heedless," not willful. The court also found that the prosecutor's "statement that Defendant 'did admit he was a convicted felon' was negligently incorrect." The judge denied Defendant's motion to bar retrial, concluding that any "[p]rejudice to Defendant [could] be rectified by a new trial."

**{16}** The case proceeded to a second trial where Defendant was again convicted of two counts of criminal sexual contact of a minor and one count of child abuse. Defendant appealed to the Court of Appeals.

**B.    Court of Appeals**

**{17}** On appeal, Defendant argued that double jeopardy barred the second trial and that he was deprived of effective assistance of counsel because his attorney had a conflict of interest. *Amador*, A-1-CA-38665, mem. op. ¶¶ 1, 5. The Court of Appeals rejected both arguments. *Id*. ¶ 6. The Court rejected Defendant's *Breit* claim because the prosecutor's conduct "did not rise to the level of willful disregard required to bar retrial." *Id*. ¶¶ 2-4 (internal quotation marks omitted). While agreeing that "the prosecutor's improper remarks may have influenced the jury's determination of credibility," the Court of Appeals said that because "the misconduct itself was limited to four discreet instances that occurred primarily during closing argument," the misconduct was neither pervasive throughout the trial nor intended to inject unfair prejudice into the trial. *Id*. ¶ 4.

**{18}** In addition, the Court of Appeals reasoned, "while the prosecutor was negligently incorrect in his belief that Defendant's conditional discharge could be used at trial as a prior felony, the prosecutor demonstrated his intent to avoid mistrial on this issue by notifying defense counsel—without objection—and the court of his

intent to use a prior felony when Defendant testified." *Id*. On the ineffective assistance of counsel issue, the court held that it would not presume prejudice where Defendant failed "to establish either the existence of an actual conflict of interest or that he received ineffective assistance of [counsel] during his second trial." *Id*. ¶ 5. The Court of Appeals affirmed Defendant's convictions. *Id*. ¶ 6.

## II. DISCUSSION

{19} Defendant timely filed a petition for writ of certiorari with this Court. The petition was granted on both issues: first, "[w]hether retrial should have been barred under *State v. Breit* based on the prosecutor's pervasive misconduct," and second, "[w]hether [Defendant] received ineffective assistance of counsel." We limit our discussion to the dispositive issue of whether a retrial should have been barred based on prosecutorial misconduct.

{20} In *Breit*, this Court announced a three-prong test for determining when prosecutorial misconduct bars a second trial as violating double jeopardy under Article II, Section 15 of the New Mexico Constitution: (1) "when improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial," (2) "the official knows that the conduct is improper and prejudicial," and (3) "the official either intends to provoke a mistrial

13

or acts in willful disregard of the resulting mistrial, retrial, or reversal." *Breit*, 1996-NMSC-067, ¶ 32.

{21} The State concedes that the first two prongs of the *Breit* test are met. Although we are not bound by it, we accept the State's concession, as the Court of Appeals only addressed *Breit*'s third willful disregard prong. *But see State v. Comitz*, 2019-NMSC-011, ¶ 25, 443 P.3d 1130 (declining to accept State's concession that some of the defendant's convictions violated double jeopardy).

**A. Standard of Review**

{22} "An appellate review of a prosecutorial misconduct claim presents a mixed question of law and fact." *State v. McClaugherty*, 2008-NMSC-044, ¶ 39, 144 N.M. 483, 188 P.3d 1234. We "defer to the district court when it has made findings of fact that are supported by substantial evidence and [review] de novo the district court's application of the law to the facts." *Id*. On the ultimate question of whether a defendant's right to be free from double jeopardy was violated, our review is de novo. *Comitz*, 2019-NMSC-011, ¶ 26.

**B. The Prosecutor Acted in Willful Disregard of the Resulting Mistrial**

{23} If a prosecutor "either intends to provoke a mistrial *or* acts in willful disregard of the resulting mistrial, retrial or reversal," the third prong of *Breit* is met. 1996-NMSC-067, ¶ 32 (emphasis added). There is no contention that the prosecutor here

14

acted with an intent to provoke a mistrial; we therefore address whether the prosecutor acted with a willful disregard of the resulting mistrial, retrial, or reversal.

{24} "[Willful disregard] connotes a conscious and purposeful decision by the prosecutor to dismiss any concern that his or her conduct may lead to a mistrial or reversal." *Id*. ¶ 34 (internal quotation marks omitted). A prosecutor acts with "willful disregard" of a possible mistrial or reversal when he or she "is actually aware, *or is presumed to be aware*, of the potential consequences of his or her actions." *Id*. "The presumption that the prosecutor is aware of such consequences is established by the prosecutor's egregious conduct, not necessarily from an inference of a conscious and purposeful decision to bring about a mistrial." *McClaugherty*, 2008-NMSC-044, ¶ 58. This is an objective standard. *Id*. ¶ 72. ("We clarify the holding in *Breit* that the standard by which courts should evaluate a prosecutor's conduct to determine whether the conduct is willful is an objective one in light of the totality of the circumstances of the trial."). That said, the threshold of willful disregard was intended to be high—"double jeopardy will rarely bar reprosecution if the misconduct is an isolated instance during the course of an otherwise fair trial." *Breit*, 1996-NMSC-067, ¶ 33. That high threshold was met here.

{25} Defendant contends that the prosecutor acted in willful disregard of the resulting mistrial or reversal when he improperly represented Defendant's

conditional discharge as a felony conviction to impeach Defendant and when he then argued Defendant was not credible in closing arguments. Defendant also contends that the prosecutor's misconduct was willful during closing argument, when he repeatedly called Defendant a pedophile, mentioned the Catholic Church clergy abuse scandal, inverted the reasonable doubt standard, and shifted the burden of proof to Defendant. The State, in turn, admits the prosecutor erred in representing Defendant had a prior felony conviction in his closing and rebuttal arguments. But, the State asserts that such errors are not egregious or pervasive enough to prove the prosecutor acted with willful disregard of a mistrial or new trial. We disagree with the State.

{26}    We begin with the conditional discharge. After the State rested, the prosecutor informed the court that he would impeach Defendant with—what the prosecutor characterized as—a prior felony conviction for child abuse. The only way to refute the child's testimony was for Defendant to testify since they were the only ones present. In reliance on the prosecutor's representation, defense counsel brought up the conviction to lessen its impact on the jury. In urging the jury to find Defendant guilty, the prosecutor argued that Defendant was a convicted felon for child abuse and, therefore, should not be believed. The jury then found Defendant guilty of criminal sexual contact of a minor and child abuse. Two hours later, the prosecutor

disclosed that Defendant received a conditional discharge, and his exchange with the judge demonstrates that he did not know a conditional discharge could not count as a prior felony conviction for impeachment purposes and that he was not clear on whether Defendant had, in fact, satisfactorily completed the terms of the conditional discharge. In denying Defendant's *Breit* motion, the judge described the prosecutor's incorrect representation as "negligently incorrect," not rising to the level of willful misconduct. We disagree.

{27} A basic, fundamental rule of evidence is that impeachment of a defendant in a criminal case is governed by Rule 11-609. The rule permits impeaching a testifying defendant's "character for truthfulness" with a felony conviction not older than ten years "if the probative value of the evidence outweighs its prejudicial effect to that defendant." Rule 11-609(A)(1)(b). It is settled that the admission of a misdemeanor or felony conviction must be approached with great caution because it may cause undue, irreparable prejudice. *State v. Williams*, 1966-NMSC-145, ¶ 11, 76 N.M. 578, 417 P.2d 62. The reasons are part of the fabric of criminal law that any competent prosecutor knows:

> When a person is put on trial for an offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense, and not by evidence showing him guilty of other offenses wholly unconnected with the one charged, and the evidence on a trial should be confined to the question in issue. A man cannot be convicted of crime because he is a bad man generally or has committed other crimes for which he has

17

not been punished, but proof of other crimes has a tendency to prejudice the minds of the triers against the accused and to predispose them to a belief in his guilt. In addition, there is the grave danger that the jury may be confused by the evidence relating to the distinct crime.

*State v. Rowell*, 1966-NMSC-231, ¶ 5, 77 N.M. 124, 419 P.2d 966 (quoting 1 Ronald A. Anderson, *Wharton's Criminal Evidence* § 232, at 497 (12th ed. 1955)). Simply stated, the danger is that the jury will believe that because the defendant has committed a crime in the past, the defendant is predisposed to commit crimes and return a conviction on this basis. *People v. Molineux*, 61 N.E. 286, 293-94 (N.Y. 1901); *People v. Emmel*, 127 N.E. 53, 57 (Ill. 1920). It is also well recognized that the danger of prejudice is even more remarkable when the conviction of a prior crime for the same offense on trial is admitted because the jury might believe "if a defendant did it before, the defendant probably did so this time." *State v. Fernandez*, 2023-NMSC-005, ¶ 17, 528 P.3d 621 (text only)[1] (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)).

{28}    There are "rules that every legal professional, no matter how inexperienced, is charged with knowing." *Breit*, 1996-NMSC-067, ¶ 33. These are such rules. Since 1966, the rule in New Mexico has been clear: "All reasonable care, and the utmost

---

[1]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

good faith, must be exercised by the prosecutor, when questioning an accused about prior convictions, [so] an accused is not prejudiced by suggestions that he has been convicted of a misdemeanor or felony, when . . . he has not been so convicted." *Williams*, 1966-NMSC-145, ¶ 11; *see Rowell*, 1966-NMSC-231, ¶ 6. The apparent dangers of unfair, undue prejudice clearly require due diligence. *Williams*, 1966-NMSC-145, ¶ 11. "Generally, the prosecutor has the burden of going further to verify the prior conviction[] before he can properly proceed to question the accused concerning the same." *Id*. It is, therefore, a basic, fundamental principle that "a prosecutor[] who seeks to have a defendant make an admission concerning a felony when there has been no conviction[] hazards a reversal." *State v. Miller*, 1979-NMCA-014, ¶ 22, 92 N.M. 520, 590 P.2d 1175. A basic rule of New Mexico law is that a conditional discharge is not a felony conviction. *See* NMSA 1978, § 31-20-13 (1994); *In re Treinen*, 2006-NMSC-013, ¶ 4, 139 N.M. 318, 131 P.3d 1282 (per curiam).

{29} In *McClaugherty*, we said there "must be a point at which lawyers are conclusively presumed to know what is proper and what is not." 2008-NMSC-044, ¶ 49 (quoting *Pool v. Superior Court*, 677 P.2d 261, 270 (Ariz. 1984) (en banc)). That point was reached in this case. Simply researching the relevant statute shows that a conditional discharge is entered without an adjudication of guilt. Section 31-

20-13(A) (stating, "the court may, without entering an adjudication of guilt, enter a conditional discharge"). Moreover, since at least 1998, our case law has been clear that a conditional discharge is *not* a conviction. *State v. Herbstman*, 1999-NMCA-014, ¶ 20, 126 N.M. 683, 974 P.2d 177 (rejecting the argument that a person who receives a conditional discharge has been convicted); *State v. Harris*, 2013-NMCA-031, ¶ 3, 297 P.3d 374 (stating that a conditional discharge cannot serve as a conviction unless a statute specifically so states). As such, even if the prosecutor did not actually know his conduct was improper and prejudicial, it must be presumed that the prosecutor was aware of the consequences of his actions and acted with willful disregard of a mistrial or reversal in exposing the jury to inadmissible, prejudicial evidence. If those responsible for enforcing the law do not understand basic evidentiary rules while wielding the considerable power of the State, it undermines the public's confidence in the justice system. Tested against *Breit*'s objective standard, the prosecutor's conduct was sufficiently egregious to trigger the bar of double jeopardy.

{30}    The district court failed to assess the totality of the circumstances properly, especially the prosecutor's apparent lack of understanding of the fundamental principles of impeachment by a felony conviction, coupled with a lack of diligence on his part. As we explained in *McClaugherty*, we focus "on the *effect* of the

prosecutorial misconduct on the defendant, regardless of the prosecutor's intent." 2008-NMSC-044, ¶ 26. The reason for this approach was clearly explained in *Breit*:

> The object of constitutional double-jeopardy provisions is not to punish disreputable prosecutors. The purpose, rather, is to protect the defendant's interest in having the prosecution completed by the original tribunal before whom the trial was commenced. Defendants should be protected from reprosecution once a prosecutor's actions, *regardless of motive or intent*, rise to such an extreme that a new trial is the only recourse.

1996-NMSC-067, ¶ 22 (emphasis added) (citation omitted). Therefore, we reject the district court's findings that the prosecutor had not "intended to provoke a mistrial" and that the prosecutor merely made a "negligently incorrect" statement as clearly erroneous. Clearly erroneous findings by the trial court are not entitled to deference. *McClaugherty*, 2008-NMSC-044, ¶ 48.

{31}    The prosecutor's misconduct concerning the conditional discharge being represented as a prior felony, then using it to impeach Defendant's credibility in the closing argument where Defendant's credibility was critical may have been sufficient to conclude that *Breit* was a bar to Defendant's second trial. *See McClaugherty*, 2008-NMSC-044, ¶¶ 60, 70 (concluding that a single incident of misconduct at trial was a "'willful disregard of the potential for a mistrial, retrial, or reversal'"). However, we need not decide that here because additional instances of prosecutorial misconduct prejudiced Defendant in this case.

21

{32}     The prosecutor referred to Defendant as a pedophile *five times* in his closing argument and rebuttal, referred to the Catholic Church clergy abuse scandal, argued that Defendant should have brought his stepdaughters to testify, and asked the jurors to shift the burden of proof and protect other children from Defendant. These arguments were also extremely prejudicial and improper. *See White v. State*, 228 So. 3d 893, 910-911 (Miss. Ct. App. 2017) (ruling that repeatedly calling the defendant a pedophile or molester was grounds for reversal); *Rodriguez v. State*, 210 So. 3d 750, 754 (Fla. Dist. Ct. App. 2017) (stating that, by calling the defendant a pedophile, the prosecutor "suggests the defendant has engaged in repeated sexual abuse of minors and raises a profiling argument, namely that because he is a pedophile, it is likely that he would sexually molest children, including this specific victim"); *People v. Lewis*, 116 N.Y.S.3d 49, 51-52 (N.Y. App. Div. 2019) (finding the prosecutor's argument improper where it "referenced the sexual abuse scandals involving the Catholic Church and Orthodox Jewish communities" and stating that prosecutors "must stay within the four corners of the evidence and avoid irrelevant and inflammatory comments which have a tendency to prejudice the jury against the accused" (internal quotation marks and citation omitted)); *State v. Allen*, 2000-NMSC-002, ¶ 104, 128 N.M. 482, 994 P.2d 728 ("We agree with Defendant that it is improper for the prosecution to refer the jury to matters outside the record or to

22

make certain kinds of 'law and order' appeals."); *State v. Paiz*, 2006-NMCA-144, ¶ 58, 140 N.M. 815, 149 P.3d 579 (cautioning prosecutors not to invite jurors to put themselves in the victims' place).

{33} These improper arguments compounded to prejudice the jury against Defendant and, combined, demonstrated the prosecutor's willful disregard of the resulting mistrial.

## III. CONCLUSION

{34} For all the foregoing reasons, we hold that Defendant's second trial was barred by double jeopardy under Article II, Section 15 of the New Mexico Constitution. The Court of Appeals is reversed, and the case is remanded to the district court to vacate Defendant's convictions and discharge Defendant from any further prosecution in this matter.

{35} **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Justice**

23

**WE CONCUR:**

_____

**C. SHANNON BACON, Chief Justice**


_____

**DAVID K. THOMSON, Justice**


_____

**JULIE J. VARGAS, Justice**


_____

**BRIANA H. ZAMORA, Justice**